(Nos. 48452, 48453, 48535 cons.—

ROBERT C. PECHOUS *et al.,* Appellees, v. MYRTLE D. SLAWKO *et al.,* Appellants.—FRED M. DUMKE *et al.,* Appellees, v. LESTER E. ANDERSON *et al.,* Appellants.

*Opinion filed Oct. 1, 1976.—Modified on denial of rehearing Dec. 2, 1976.*

Sheldon Gardner, George C. Pontikes, and Foss, Schuman & Drake, of Chicago, for appellants Robert C. Pechous *et al.*

Burton S. Odelson and David B. Sosin, of Chicago (Timothy Michael O'Brien, of counsel), for appellants Lester E. Anderson *et al.*

Will Gierach, James E. Gierach, and Gierach, Stambulis & Schussler, Ltd., of Oak Lawn, for appellees.

MR. JUSTICE SCHAEFER delivered the opinion of the court:

These consolidated cases involve questions that relate primarily to the scope of the power of legislative bodies in home rule municipalities. One case involves the validity of ordinances adopted by the city council of the city of

Berwyn (population 52,000), and the other involves the validity of ordinances adopted by the board of trustees of the village of Oak Lawn (population 63,000). In each case the legislative body of the municipality enacted ordinances designed to transfer to itself the power to appoint certain municipal officials, and the controversy centers upon the validity of that action. Peripheral issues are also presented in both cases. Judgment was entered in each case in favor of the plaintiffs, and the defendants appealed. We granted motions to transfer the cases to this court pursuant to Rule 302(b), and on our own motion consolidated them.

We consider first the primary issue as it concerns the city of Berwyn. In addition to its elected mayor, city clerk, city treasurer, and eight aldermen, the applicable statutes (Ill. Rev. Stat. 1975, ch. 24, pars. 3—7—1, 3—7—2, 3—7—5) provide for the appointment by the mayor, with the approval of the council, of certain other officers, including the city collector, superintendent of streets and commissioner of public works. The Municipal Code of the city provided that the named offices should be filled in the same way. The position of city attorney existed, but since 1965 there had apparently been no office of city attorney or corporation counsel. The statute also provides generally that a mayor may remove any officer appointed by him, and specifically in the case of these officers in a city of Berwyn's population, that "[t]he appointees to these offices shall be subject to removal by the mayor ***." Ill. Rev. Stat. 1975, ch. 24, pars. 3—11—1, 3—7—5.

In May and June of 1975 the defendants, the aldermen of the city of Berwyn, enacted ordinances removing from office the incumbent superintendent of streets, commissioner of public works, and city collector, and appointing replacements for them. On June 9, 1975, the defendant aldermen adopted a resolution removing the incumbent city attorney. The plaintiffs, the mayor and city clerk of the city of Berwyn, brought this action challenging the power of the aldermen to exercise the

powers of appointment and removal. The plaintiffs' motion for summary judgment was allowed, and the defendants were enjoined from exercising appointment or removal powers. The trial court held that the power to appoint and remove all municipal officers, "whether established by ordinance or State Statute lies solely with" the mayor, "subject only to the advice and consent of the members of the City Council, and that the power of dismissal or removal from office is incidental to the power of appointment and may be exercised only by the Mayor of Berwyn."

The members of the city council base their claim of authority to assume the power to appoint and remove municipal officers and employees upon the fact that the city of Berwyn is a home rule municipality. The relevant provisions of the Constitution of 1970 are sections 6(a) and 6(f) of article VII, which provide:

> "(a) \*\*\*Except as limited by this Section, a home rule unit may exercise any power and perform any function pertaining to its government and affairs including, but not limited to, the power to regulate for the protection of the public health, safety, morals and welfare; to license; to tax; and to incur debt."

> "(f) A home rule unit shall have the power subject to approval by referendum to adopt, alter or repeal a form of government provided by law \*\*\*. A home rule municipality shall have the power to provide for its officers, their manner of selection and terms of office only as approved by referendum or as otherwise authorized by law. \*\*\*"

The defendants urge that these provisions mean that only "[t] hose changes in a home rule municipality which affect the basic nature of government are reserved to either the voters by referendum or the State legislature by statute." But the Constitution does not speak of changes in "the basic nature of government." It grants authority, subject to referendum approval, to "adopt, alter or repeal a form of government provided by law," and "to provide for its

officers, their manner of selection and terms of office only as approved by referendum or as otherwise authorized by law."

The meaning which the defendants would give to the constitutional provisions is not what the draftsmen intended. The Report of the Committee on Local Government of the Constitutional Convention of 1970 contains this explanation of the purpose of those provisions, which were then identified as paragraph 4.3:

> "But more than the manner of electing the county board is included within the meaning of 'form of government.' It also includes the relative powers and functions of the county board and the chief executive officer of the county. Thus this paragraph contemplates that the General Assembly will provide for various patterns of county administrative organization—perhaps including the election of a county executive officer or the appointment of a county manager or administrative officer—and that counties will be permitted to select among these plans by referendum.
>
> With respect to municipalities, the portion of paragraph 4.3 relating to 'forms of government' contemplates that various plans for the election of municipal governing boards and for the relationship of legislative and executive branches of government within municipalities will be provided by the General Assembly for selection by various municipalities through a referendum. This is essentially the pattern that now prevails by statute. (See, generally, Ill. Rev. Stat. ch. 24 (1969).)" 7 Record of Proceedings, Sixth Illinois Constitutional Convention 1667; see also Baum, *A Tentative Survey of Illinois Home Rule (Part I): Powers and Limitations*, 1972 U. Ill. L.F. 137, 146-50.

While the defendants have based their authority to enact the ordinances in question upon their status as home rule municipalities, we think it important to point out that under section 7 of article VII of the Constitution of 1970 municipalities which are not home rule units also have the same authority "by referendum, to adopt, alter or repeal their forms of government provided by law," and "to

provide by referendum for their officers, manner of selection and terms of office."

The "pattern that now prevails by statute" is the pattern contained in the Municipal Code of 1961, which provides for several alternative forms of municipal government. A municipality may be organized as a city or as a village having the form of government provided in article 3, and it may by referendum adopt the "Commission" Form of Municipal Government provided in article 4, or the "Managerial" Form of Municipal Government provided in article 5. (Ill. Rev. Stat. 1973, ch. 24, arts. 3, 4, and 5.) Different relationships between the legislative and executive branches of municipal government are provided in these different forms of government. Under the "Commission" Form of Municipal Government, for example, the statute provides that "[t]he council and its members shall possess and exercise all executive, administrative, and legislative powers and duties now possessed and exercised by the executive, legislative, and administrative officers" in other municipalities. Ill. Rev. Stat. 1975, ch. 24, par. 4—5—2.

The defendant aldermen advance several opinions of this court in support of the validity of their action, but none of them involved the issue presented in this case. The question involved in *Kanellos v. County of Cook* (1972), 53 Ill. 2d 161, was whether a home rule county could issue general obligation bonds without a referendum. *People ex rel. Hanrahan v. Beck* (1973), 54 Ill. 2d 561, concerned the validity of a county ordinance which created a new office of county comptroller to be filled by the president with the approval of the county board. It did not involve an attempt by the legislative body of the county to appropriate to itself the power to appoint and remove officers and employees. *Clarke v. Village of Arlington Heights* (1974), 57 Ill. 2d 50, sustained ordinances that increased the number of village trustees from six, as authorized by statute, to eight, and made the office of

village clerk elective. But those ordinances, as the opinion clearly pointed out, had been approved at a referendum election. *Peters v. City of Springfield* (1974), 57 Ill. 2d 142, involved an ordinance which reduced the retirement age of policemen and firemen from 63, the age fixed by statute, to 60. The court held that "[t]he civil service system of a municipality is not its form of government and changes in the system need not be submitted to a referendum." (57 Ill. 2d at 149.) *Paglini v. Police Board* (1975), 61 Ill. 2d 233, held that members of the Police Board are not officers within the meaning of section 6(f), and sustained an ordinance of the city of Chicago which authorized hearing officers, rather than Board members, to conduct hearings on charges of misconduct by policemen. *Stryker v. Village of Oak Park* (1976), 62 Ill. 2d 523, sustained the validity of ordinances, adopted without a referendum, which changed the statutory qualifications for members of the Board of Fire and Police Commissioners and placed in the village manager the power to appoint the chief and deputy chiefs of police. No issue arising under section 6(f) of the Constitution was discussed.

The Municipal Code of 1961 provides two methods by which city and village officers other than the mayor and the members of the city council may be chosen. Section 3—4—19 provides that "the city council, in its discretion, may provide by ordinance passed by a two-thirds vote of all the aldermen elected for the election by the electors of the city of a city collector, a city marshal, a city superintendent of streets, a corporation counsel, a city comptroller, or any of them, and any other officers which the city council considers necessary or expedient." (Ill. Rev. Stat. 1975, ch. 24, par. 3—4—19.) Section 3—7—1 authorizes the city council by a two-thirds vote, instead of providing for the election of these officers, to provide for their appointment by the mayor, with the approval of the city council. The only form of municipal government provided by law which authorizes a city council or the

board of trustees of a village to exercise powers of appointment and removal is the Commission Form of Municipal Government provided for in article 4 of the Municipal Code. (Ill. Rev. Stat. 1975, ch. 24, par. 4—1—1 *et seq.*) The city of Berwyn, however, has not adopted that form of government, nor has it attempted to secure, by a referendum vote, authority for the members of the city council to appoint or remove municipal officers or employees. It follows, therefore, that the trial court correctly enjoined the defendant aldermen from exercising the powers of appointment and removal which they improperly assumed.

In the Oak Lawn case the first problem presented concerns the validity of actions taken by the defendant members of the board of trustees with respect to the village attorney. Since 1953 the village has operated under the "Managerial Form of Municipal Government" provided for in article 5 of the Municipal Code of 1961. As of 1971, the Village Code authorized the city manager to appoint certain officers of the city, including the village attorney, "and to appoint and remove, or suspend, all Village employees and other Department heads."

An ordinance adopted in May of 1975, over the veto of the village president, eliminated the office of village attorney from the list of officers to be appointed by the village manager and provided that the village attorney "shall be appointed by the Board of Trustees." The trial court issued a temporary injunction restraining enforcement of this ordinance. The defendants appealed to the appellate court, but the appeal was dismissed as moot, apparently because of subsequent ordinances adopted by the board of trustees.

On June 17, 1975, another ordinance was adopted, over the veto of the village president, which "established the position of corporation counsel of the Village of Oak Lawn," and provided that "the corporation counsel shall be appointed upon nomination of any of the corporate

authorities, acting jointly, and shall be subject to removal by the joint action of the corporate authorities and shall hold office upon said nomination being approved by a majority of the corporate authorities entitled to vote." The ordinance set forth the duties of the new position in a recital that appears to embrace all conceivable legal work of the village; it also authorized the corporation counsel to hire a "Village Prosecutor" and other attorneys as assistant corporation counsel. The ordinance stated, however, that it did not alter "the existing ordinance establishing the position of village attorney."

On June 24, 1975, the board of trustees adopted, over the veto of the president of the village, another ordinance which again established the position of corporation counsel but this time provided that the corporation counsel should be retained on an independent contractor basis, by "the joint action of the corporate authorities." This ordinance stated that it did not "alter the existing ordinance establishing the office of village attorney, as long as that office is in existence."

An ordinance adopted August 19, 1975, over the veto of the village president, repealed the provisions of the Village Code relating to the office of village attorney, "effective January 1, 1976." On September 23, 1975, the defendants adopted, over the veto of the village president, an ordinance to become effective on January 1, 1976. This ordinance amended the Village Code to provide that the president and board of trustees, "voting jointly, may employ an attorney or attorneys as an independent contractor or as independent contractors."

The most significant characteristic of the managerial form of municipal government is that the "municipal manager *** shall be the administrative head of the municipal government." (Ill. Rev. Stat. 1975, ch. 24, par. 5—3—7.) The board of trustees has no powers with respect to administration. The statute provides: "The powers of the council or board shall be purely legislative except as

may be otherwise provided by any other act or by any article of this Code other than Articles 3 or 4." (Ill. Rev. Stat. 1975, ch. 24, par. 5—3—6.) These statutory characteristics of the "city manager" form of government are not unique to Illinois. "It is basic to the city manager form of government that the council shall be the policy-making body, and the manager the chief administrator. Unless otherwise provided for by statute or charter, the council does not and should not attempt to dictate or confirm appointments of city officers and employees, nor importune the manager on appointments, or indeed on any other administrative matter." 56 Am. Jur. 2d *Municipal Corporations* sec. 186 (1971).

The basic objective of the succession of enactments by the board of trustees appears to have been to secure for itself the power to control the office of village attorney. Considering these efforts seriatim, the ordinance of May, 1975, in so far as it sought to abolish the office of village attorney, was within the power of the board of trustees. But the ordinance also sought to take over the village manager's power of appointment, and to that extent it was beyond the power of the board. Nothing in the record suggests that the two purposes were severable, and in our opinion the trial court properly held the entire ordinance invalid. The two ordinances adopted in June were also beyond the power of the board of trustees. Without a referendum they encroached upon the appointive power granted to the village manager both by statute and by the Village Code, and they also sought to change the manner of selection of a village officer without a referendum. Those ordinances, too, were invalid.

The ordinance of August 19, 1975, stands upon a somewhat different footing. Section 3—7—1 of the Municipal Code provides: "By ordinance or resolution, to take effect at the end of the current fiscal year," the city council by a two-thirds vote "may discontinue any office so created, and devolve the duties of that office on any

other city officer." Section 3—12—3 provides that the trustees of a village "shall perform the duties and exercise the powers conferred upon the aldermen of the city." (Ill. Rev. Stat. 1975, ch. 24, par. 3—12—3.) The plaintiffs argue that the ordinance of August 19 is invalid because it does not devolve the duties of the discontinued office of village attorney upon any other village officer. This argument is based upon a literal reading of section 3—7—1. In our opinion, however, this statute is another illustration of legislative use of the conjunctive "and" when the disjunctive "or" is intended. There are numerous small municipalities that have no continuing need for a village attorney, yet the statute, read literally, would prohibit discontinuance of the office unless one of the other officers happened to be a lawyer so that the duties might be devolved upon him. We think the statute, properly read, confers two distinct powers: first, the power to discontinue an office, and second, the power to devolve the duties of one office upon another officer.

In the light of the numerous efforts of the trustees which preceded the enactment of the ordinances of August 19 and September 23, however, we are of the opinion that they must be read together. So read, they form a part of a continuing effort on the part of the trustees to encroach upon the statutory authority of the city manager and to appropriate to themselves, without a referendum, the power to appoint the legal advisor for the village. We conclude, therefore, that the circuit court correctly held the ordinances of August 19 and September 23 invalid.

The second issue in the Oak Lawn case concerns the validity of an ordinance terminating the duties of the village president as local liquor control commissioner and supplanting him with a "local liquor control commission to be composed of three members of the corporate authorities" who are to be appointed by the board of trustees. The Liquor Control Act provides that the "mayor or president of the board of trustees of each city, village or

incorporated town \*\*\* shall be the local liquor control commissioner for their respective" villages and cities. (Ill. Rev. Stat. 1975, ch. 43, par. 111.) The statute also provides that the local liquor control commissioner has authority to grant, suspend or revoke local licenses for cause, to enter or authorize any law enforcement officer to enter upon any licensed premises, to receive and act upon complaints that any of the provisions of the State statute or rules or regulations adopted pursuant to it are being violated, and to receive local license fees and pay them to the appropriate local officer. (Ill. Rev. Stat. 1975, ch. 43, par. 112.) The ordinance would transfer these powers to the three trustees who are named by majority vote of the board of trustees to serve as members of the local liquor control commission. It recites:

> "It is the intent and purpose of this ordinance, that the Village of Oak Lawn utilize its home-rule power in order to concurrently regulate the sale of alcoholic liquor in the Village of Oak Lawn. Where this ordinance specifically alters State law, such as where State law provides that the mayor shall be the local liquor control commissioner, and this ordinance provides that the local liquor control commission shall be a commission composed of three of the members of the corporate authorities of the Village, then said ordinance shall control. However, where State law is not specifically altered or amended, or where it is not mentioned at all, then, in that case, the law of the State of Illinois shall control concerning the control of liquor within the Village of Oak Lawn."

In support of the validity of this ordinance the defendant trustees advance two recent decisions of the appellate court, each of which sustained an ordinance that increased the age of persons to whom beer and wine might be sold within the municipality from 19 years—the age approved by the State—to 21 years. (*Illinois Liquor Control Com. v. City of Joliet* (1975), 26 Ill. App. 3d 27; *Liquor Control Com. v. City of Calumet City* (1975), 28 Ill. App. 3d 279.) Those cases, however, do not approach

the problem presented in this case. The ordinance in each of those cases was held to fall within the provision of paragraph (a) of section 6 of article VII, which grants to home rule municipalities "the power to regulate for the protection of the public health, safety, morals and welfare" as well as the power to license, to tax, and to incur debt. In the present case the issue does not arise under section 6(a), nor are questions of preemption involved, as the quoted portion of the ordinance suggests. In constitutional terms, the issue would be whether the ordinance in question can become effective without a referendum under the provisions of paragraph (f) of section 6. But it is unnecessary to reach this constitutional issue, since the ordinance is invalid because it constitutes another effort on the part of the members of the board of trustees of a village operating under the village manager plan to inject themselves into matters of administration by first taking unto themselves the authority to appoint from among their own number those who are to constitute the liquor control commission, and then undertaking to serve themselves as members of that commission.

Another issue presented in the Oak Lawn case concerns the compensation to be paid to the village president. The Village Code, as it was last amended in 1968, fixed the salary of the president at $12,000 per year, and his compensation as local liquor control commissioner (see Ill. Rev. Stat. 1975, ch. 43, pars. 111, 111a) at $2,000 per year. The annual appropriation ordinance of the village for the fiscal year that began on January 1, 1973, was adopted in December of 1972, and it provided for compensation of the president at $18,000 per year, and as local liquor control commissioner at $2,000 per year. The village president was elected in April of 1973 for a term of four years commencing May 1, 1973. The defendant trustees contend that the compensation of the village president is governed by the following statutory provision:

"The corporate authorities of any city may fix the salary of all city officers, except those who are elected for a definite term, and of all employees, in the annual appropriation ordinance. They may fix the salary of all officers who are elected for a definite term in an ordinance other than the appropriation ordinance." (Ill. Rev. Stat. 1973, ch. 24, par. 3—13—2.)

The defendants conclude, therefore, that the compensation provided in the annual appropriation ordinance must be disregarded.

The plaintiff asserts that the kind of ordinance that is to be used in fixing the salaries of the officers of a home rule municipality is a matter that concerns the "government and affairs" of the municipality within section 6(a) of article VII of the Constitution, and not one that relates to its "form of government" or the creation or elimination of officers or "their manner of selection and terms of office" within the limitations of section 6(f). We agree. The matter of the particular form of ordinance to be used in fixing the compensation of the village president seems clearly to relate to the government and affairs of the municipality, and not to fall within the exceptions mentioned in section 6(f) of article VII.

In both of these consolidated cases the defendants have relied heavily upon the opinion of the Appellate Court, Second District, in *Dianis v. Waenke* (1975), 29 Ill. App. 3d 133. In that case the court sustained the validity of 1974 ordinances of the village of Wauconda, a non-home-rule municipality, which abolished the office of village attorney and authorized the village president and the board of trustees, acting jointly, to employ an attorney as an independent contractor. In reaching its conclusion the appellate court held that the village was entitled to disregard the method prescribed by law for the appointment of village officers (appointment by the president and confirmation by the trustees) "unless it is also shown that the legislature intended its method to be exclusive." (29 Ill. App. 3d at 139.) Further review of the judgment of the

appellate court was not sought.

We do not find the *Dianis* opinion persuasive. No authority was cited to support the statement quoted above, which is directly contrary to fundamental principles that have governed the powers of officers of municipal corporations. Moreover, the opinion totally failed to recognize the provisions of section 7 of article VII of the Constitution with respect to the authority of non-home-rule units "to provide *by referendum* for their officers, manner of selection and terms of office." (Emphasis supplied.)

After the trial court had entered its judgments disposing of the issues which we have thus far discussed, the mayor in the Berwyn case and the village president in the Oak Lawn case each filed a petition requesting the court to assess the fees of his attorneys against the members of the legislative body of his municipality or alternatively against the municipality itself. The trial court found that "reasonable attorney's fees and costs should be awarded to the attorneys for plaintiffs in an amount to be determined upon hearing after conclusion of appellate proceedings." From these orders the defendants have also appealed.

We agree with the plaintiffs that this litigation was brought about by the illegal conduct of the individual members of the two legislative bodies. It is also true, as the plaintiffs point out, that recent decisions have indicated a decided trend toward the judicial allowance of attorney's fees to successful plaintiffs. Ehrenzweig, *Reimbursement of Counsel Fees and the Great Society*, 54 Calif. L. Rev. 792 (1966); Note, *The Allocation of Attorney's Fees After Mills v. Electric Auto-Lite Co.*, 38 U. Chi. L. Rev. 316 (1971); Falcon, *Award of Attorneys' Fees in Civil Rights and Constitutional Litigation*, 33 Md. L. Rev. 379 (1973).

Nevertheless we are of the opinion that these are not proper cases for the award of fees to the attorneys for the plaintiffs. No ground exists for placing the burden of the

fees of the attorneys for the plaintiffs or of the attorneys for the defendant members of the legislative bodies upon the taxpayers of the municipalities. And while the conduct of the defendants, and particularly the conduct of the village trustees in the Oak Lawn case, appears to have been largely if not entirely without legal justification, the considerations that have supported the "elementary rule" that members of a municipal legislative body are not personally liable for their legislative acts (see 56 Am. Jur. 2d *Municipal Corporations* sec. 146) remain applicable here. We have therefore concluded that the request of the plaintiffs for the taxation of the fees of their attorneys as costs against the individual members of the legislative bodies should be denied. Ordinary costs, however, will be taxed against those defendants individually.

The judgments of the circuit court of Cook County are affirmed, except to the extent that they related to attorneys' fees.

*Judgments affirmed.*