THE VILLAGE OF WESTMONT *et al.*, Plaintiffs-Appellees, v. JAMES LENIHAN, Indiv. and as Trustee for the Village of Westmont, *et al.*, Defendants-Appellants.

Second District   No. 2—98—1038

Opinion filed December 22, 1998.—Rehearing denied January 28, 1999.

Barbara J. Gosselar, John N. Pieper, and Scott A. Schimanski, all of Kubiesa, Spiroff, Gosselar & Pieper, P.C., of Oakbrook Terrace, and John H. Kelly, of Ottosen, Trevarthen, Britz & Dooley, Ltd., of Wheaton, for appellants.

Peter A. Zamis and Mark W. Daniel, both of Rathje, Woodward, Dyer & Burt, of Wheaton, for appellees.

PRESIDING JUSTICE GEIGER delivered the opinion of the court:

The instant controversy stems from a dispute between the mayor

of the Village of Westmont, Edwin Burke, and four members of the village's board of trustees, James Lenihan, Mark Forzley, William Rahn, and Wendy Wilson (collectively, trustees), concerning the employment of an attorney to provide legal services to the Village of Westmont (the village). On May 18, 1998, the trustees enacted a resolution approving a contract for legal services with the law firm of Kubiesa, Spiroff, Gosselar & Pieper, P.C. (the Kubiesa firm) and terminating any express or implied agreements with the law firm of Rathje, Woodward, Dyer & Burt (the Rathje firm). Prior to the enactment of the resolution, Mayor Burke had assigned all of the village's legal work to the Rathje firm. Mayor Burke subsequently filed a suit on behalf of the village and against the trustees and the Kubiesa firm, seeking a declaration that the resolution and contract were invalid and requesting other injunctive relief. On July 10, 1998, the circuit court of Du Page County entered an order preliminarily enjoining enforcement of the resolution and preserving the status quo. The trustees and the Kubiesa firm have filed an interlocutory appeal from this order.

The parties do not dispute the underlying facts of the case. In 1993, James Addington became mayor of the village. On June 21, 1993, he appointed Kenneth Kubiesa of the Kubiesa firm to the office of village attorney. Mayor Addington also designated Ron Civinelli as police attorney and Peter Zamis of the Rathje firm as attorney for litigation. The board of trustees unanimously approved these appointments.

In 1997, plaintiff Edwin Burke became mayor. In July 1997, Mayor Burke removed Kenneth Kubiesa from the office of village attorney. Mayor Burke never consulted with the board of trustees prior to removing Kubiesa from office. Mayor Burke also has never presented the board of trustees with a new permanent appointment for the office of village attorney. Rather, Mayor Burke has delegated all of the village's legal work to the Rathje firm. Once again, Mayor Burke did not consult with the board of trustees prior to delegating these responsibilities to the Rathje firm.

On May 18, 1998, the defendant trustees approved a resolution and contract to retain the Kubiesa firm to perform duties as "Village Attorneys." The resolution also terminated any appointment, designation, or contract for legal services, whether express or implied, with Zamis, Mark Daniel, or the Rathje firm. The contract with the Kubiesa firm provided that the agreement would be terminated upon the appointment and confirmation of a new village attorney. Although Mayor Burke vetoed this resolution, on June 15, 1998, the trustees overrode the veto.

On June 16, 1998, Mayor Burke filed the instant complaint on

behalf of the village. The complaint named the trustees and the Kubiesa firm as defendants. In the complaint, the plaintiffs sought (1) a declaration that the trustees' resolution and the contract with the Kubiesa firm were invalid; (2) an injunction preventing the trustees and the Kubiesa firm from operating under the contract; and (3) a writ of *mandamus* requiring the Kubiesa firm to turn over all of the village's files in its possession. The plaintiffs subsequently filed a motion for a temporary restraining order and the entry of a preliminary injunction.

On June 22, 1998, following a hearing, the trial court issued a temporary restraining order preserving the status quo between the parties. Specifically, the order provided that both the Rathje firm and the Kubiesa firm would continue to handle those legal matters already referred to them by the village; additionally, the Rathje firm was to take any new legal matters that arose following the issuance of the temporary restraining order.

The trustees and the Kubiesa firm subsequently filed motions to dismiss the complaint pursuant to section 2—619 of the Code of Civil Procedure (735 ILCS 5/2—619 (West 1996)). In their motions, the defendants argued, *inter alia*, that the board of trustees was authorized to enact the subject resolution and to enter into the contract with the Kubiesa firm pursuant to section 8—1—7(b) of the Illinois Municipal Code (the Code) (65 ILCS 5/8—1—7(b) (West 1996)). The defendants also argued that the resolution did not impermissibly interfere with Mayor Burke's statutory authority to appoint and remove village officials. For these reasons, the defendants argued that the trial court was without legal authority to enjoin enforcement of this official act.

On July 10, 1998, the trial court conducted a hearing on the motion for a preliminary injunction. At the hearing, the parties stipulated to the underlying facts and agreed to forego an evidentiary hearing. Following oral argument, the trial court granted the motion and entered a preliminary injunction barring the trustees and the Kubiesa firm from operating under the terms of the resolution. The trial court also ordered both the Rathje firm and Kubiesa firm to continue to handle those matters that they had already been assigned. Additionally, the trial court made an express finding that the office of village attorney was vacant and ordered Mayor Burke to bring forward an appointment for the office for the consent of the board of trustees. The trial court explained its ruling as follows:

> "Mr. Kubiesa was removed a year ago by the action of Mayor Burke. There was no objection on the part of the trustees within a reasonable time. A year has now passed. There is an implied acquiescence by the Board in that vacancy.

However, the existence of a vacancy and the lack of an appointment by the Mayor does not allow the trustees to step in and exercise purported powers, which have no foundation in the statute or in the ordinance.

\* \* \*

Obviously, in our system of balance of powers, checks and balances, the statutes require that the executive make the appointment and the trustees advise and consent and approve this appointment."

By separate order, the trial court also denied the defendants' motions to dismiss the complaint. Following the denial of their motions to reconsider, the defendants filed this timely interlocutory appeal pursuant to Supreme Court Rule 307(a)(1). 166 Ill. 2d R. 307(a)(1).

On appeal, the defendants argue that the trial court erred in entering the preliminary injunction. Specifically, the defendants argue that the plaintiffs failed to present sufficient evidence demonstrating that they were entitled to a preliminary injunction. Additionally, the defendants contend that the trial court was without authority to enjoin the legislative actions of public officials. For these same reasons, the defendants contend that the trial court erred in denying their motions to dismiss the complaint.

■ Initially, the plaintiffs assert that the defendants have not properly preserved their contentions of error relating to the trial court's entry of the preliminary injunction. Specifically, the plaintiffs contend that the defendants' agreement to forego an evidentiary hearing prior to the entry of the injunction was tantamount to waiver. We disagree. A review of the record demonstrates that the facts herein were uncontested and that the defendants agreed that a formal evidentiary hearing was unnecessary. However, the defendants did not stipulate to the resolution of the underlying legal questions at issue. Rather, the defendants advanced the precise legal arguments in opposition to the injunction that are raised in the instant appeal. For these reasons, we believe that the defendants have properly preserved their contentions of error relating to the entry of the preliminary injunction.

However, we do agree with the plaintiffs that the trial court's order denying the defendants' motions to dismiss was not appealable. It is well settled that the denial of a motion to dismiss is not a final and appealable order. *Pizzato's Inc. v. City of Berwyn*, 168 Ill. App. 3d 796, 798 (1988). Such orders are not final adjudications as to the rights of the parties but are interlocutory in nature. *Desnick v. Department of Professional Regulation*, 171 Ill. 2d 510, 540 (1996). We will therefore limit the scope of our review to the propriety of the preliminary injunction.

■ In order to grant preliminary injunctive relief, the trial court must find that (1) the plaintiff has demonstrated a clearly ascertained right in need of protection; (2) irreparable injury will occur without the injunction; (3) no adequate remedy at law exists; and (4) there is a probability that the plaintiff will succeed on the merits of the case. *Lindholm v. Holtz*, 221 Ill. App. 3d 330, 333 (1991). It is not the purpose of a preliminary injunction to determine any controverted rights or to decide the merits of the case. *Lake in the Hills Aviation Group, Inc. v. Village of Lake in the Hills*, 298 Ill. App. 3d 175, 182 (1998). Rather, a preliminary injunction is granted prior to trial on the merits for the purpose of preventing a threatened wrong and to preserve the status quo with the least injury to the parties concerned. *Lake in the Hills*, 298 Ill. App. 3d at 182.

The issuance of a preliminary injunction is within the sound discretion of the trial court upon a *prima facie* demonstration that there is a fair question as to the existence of the right claimed and that the circumstances lead to a reasonable belief that the moving party will be entitled to the relief sought. *Lake in the Hills*, 298 Ill. App. 3d at 182-83. The reviewing court will not set aside the trial court's determination unless there has been an abuse of discretion. *Russell v. Howe*, 293 Ill. App. 3d 293, 295 (1997).

■ In order to determine whether the plaintiffs have raised a fair question as to their right to the relief sought in their complaint, we must examine the governing provisions of the Code. Section 3.1—30—5(a) of the Code grants the mayor the sole power to appoint municipal officers, such as a village attorney or corporate counsel. 65 ILCS 5/3.1—30—5(a)(5) (West 1996). Such an appointment must be made with the "advice and consent" of the board of trustees. 65 ILCS 5/3.1—30—5(a) (West 1996). Additionally, section 3.1—35—10 of the Code grants the mayor the power to remove any appointed officer whenever the mayor is of the opinion that the interests of the municipality demand removal. 65 ILCS 5/3.1—35—10 (West 1996). The board of trustees may restore a removed officer by a two-thirds vote. 65 ILCS 5/3.1—35—10 (West 1996). If the officer is not restored, section 3.1—30—5(d) of the Code permits the mayor to appoint a temporary successor. 65 ILCS 5/3.1—30—5(d) (West 1996).

Although the Code provides that the board of trustees may, by two-thirds vote, discontinue any appointed office at the end of the fiscal year and devolve the duties of that office on another municipal officer (65 ILCS 3.1—30—5(b) (West 1996)), the Code does not affirmatively grant the board of trustees the power to remove appointed municipal officers. Moreover, although the board of trustees must consent to the appointment of a municipal officer (65 ILCS 5/3.1—

30—5(a) (West 1996)) and may fix the term of office (65 ILCS 5/3.1—30—5(c) (West 1996)), the Code conveys no independent appointment power to the board of trustees.

In accordance with these provisions, the village has enacted an ordinance creating the municipal office of village attorney. This ordinance provides as follows:

> "There is hereby created the office of village attorney, an executive office of the village. The attorney shall be appointed by the [mayor] and the board of trustees and shall serve until his successor is appointed." Westmont Code of Ordinances § 2—221 (19__).

The village has also enacted an ordinance to provide for legal counsel in instances where no village attorney has been appointed:

> "The [mayor] with the consent of the board of trustees may from time to time retain an attorney to represent or advise the village on legal matters if no village attorney has been appointed; and he may likewise retain special counsel to advise or represent the village on special matters or to assist the village attorney." Westmont Code of Ordinances § 2—222 (19__).

■ As noted above, in July 1997, Mayor Burke removed Kenneth Kubiesa from the office of village attorney. Although Mayor Burke did not consult with the board of trustees prior to the removal, he was not obligated to do so under section 3.1—35—10 of the Code (65 ILCS 5/3.1—35—10 (West 1996)). As the board of trustees did not subsequently restore Kenneth Kubiesa to the office of village attorney by a two-thirds vote, the removal became effective. 65 ILCS 5/3.1—35—10 (West 1996).

■ Following the removal of Kenneth Kubiesa as village attorney, Mayor Burke delegated all responsibilities for the village's legal work to Zamis and the Rathje firm. At no time did Mayor Burke seek the consent of the board of trustees for this delegation of work to the Rathje firm. Although the defendants challenge the mayor's authority to take such action, section 3.1—30—5(d) of the Code plainly permits the mayor to appoint a temporary successor following the dismissal of a municipal officer. 65 ILCS 5/3.1—30—5(d) (West 1996); see also *Village of Round Lake Beach v. Brenner*, 107 Ill. App. 3d 1, 6-7 (1982) (mayor had power to appoint temporary chief of police without the consent of the board of trustees); *Michels v. McCarty*, 196 Ill. App. 493, 499 (1915) (noting that a mayor may appoint a temporary replacement after removing an officer).

The trustees subsequently passed a resolution, over Mayor Burke's veto, terminating any contractual relationship with Zamis and the Rathje firm to provide the village's legal services. However, as noted above, Mayor Burke was authorized to appoint Zamis as a temporary

replacement following the dismissal of Kenneth Kubiesa. See 65 ILCS 5/3.1—30—5(d) (West 1996). Based on our review of the Code, we are aware of no statutory authority or ordinance that would authorize the trustees to unilaterally terminate this temporary assignment. As already noted, the Code conveys no independent power to the board of trustees to remove appointed municipal officers. Nor have the defendants provided any authority in support of their contention that they were authorized to take such action. For these reasons, we believe that there is a fair question as to the alleged impropriety of the trustees' termination of the Rathje firm.

We also believe that there is a serious question as to whether the trustees had authority to independently retain the Kubiesa firm to perform duties as "Village Attorneys." As detailed above, under section 3.1—30—5(a) of the Code and the applicable village ordinances, only the mayor has the power to appoint an attorney, whether it be for the office of village attorney or as special counsel. Nowhere in the village ordinances is the board of trustees unilaterally permitted to employ an outside attorney.

The defendants argue that they were authorized to employ the Kubiesa firm under section 8—1—7(b) of the Code, which provides, in relevant part:

"Notwithstanding any provision of this Code to the contrary, the corporate authorities of any municipality may make contracts for a term exceeding one year and not exceeding the term of the mayor or president holding office at the time the contract is executed, relating to: (1) the employment of a municipal manager, administrator, engineer, health officer, land planner, finance director, attorney, police chief or other officer who requires technical training or knowledge; (2) the employment of outside professional consultants such as engineers, doctors, land planners, auditors, attorneys or other professional consultants who require technical training or knowledge[.]" 65 ILCS 5/8—1—7(b) (West 1996).

The defendants argue that this statute gives the board of trustees the authority to independently contract for outside legal services, whether or not the mayor had appointed an individual to serve as village attorney. The defendants also argue that such contracting authority does not conflict with the mayor's appointment powers under section 3.1—30—5(a), noting that section 8—1—7(b) authorizes two different types of contracts for professional services. Subparagraph (1) authorizes a contract for the services of a professional who has been appointed as a municipal officer, such as village attorney or police chief. Subparagraph (2), on the other hand, authorizes a contract for the services of professionals who are not municipal officers but who

are retained as consultants to provide their technical expertise for the municipality.

The interpretation of this statutory language is a question of first impression. In interpreting the meaning of a statute, our primary concern is to ascertain and give effect to the true intent of the legislature. *Paris v. Feder*, 179 Ill. 2d 173, 177 (1997). The best evidence of legislative intent is the language used in the statute itself, which must be given its plain and ordinary meaning. *Paris*, 179 Ill. 2d at 177. The statute should be evaluated as a whole, with each provision construed in connection with every other section. *Abrahamson v. Illinois Department of Professional Regulation*, 153 Ill. 2d 76, 91 (1992).

Based on our examination of the plain language of the statute, we agree with the defendants' initial contention that subsection (2) permits the municipal corporate authorities to retain additional outside legal services whether or not the mayor has appointed an individual to serve in the office of village attorney. However, we do not believe that section 8—1—7(b) permits the board of trustees to take such action unilaterally. Under section 1—1—2(2) of the Code, the term "corporate authorities" is defined as the mayor *and* the trustees. 65 ILCS 5/1—1—2(2) (West 1996). We therefore believe that the statute requires that the mayor and the board of trustees must act together in undertaking to contract for outside legal consulting services.

We note that such a conclusion is consistent with that portion of section 8—1—7(b) that restricts the maximum length of such consulting contracts to the remainder of the term of the mayor holding office at the time the contract is executed. 65 ILCS 5/8—1—7(b) (West 1996). If the legislature had not intended the mayor to be involved in the decision to retain additional outside legal services, then there would be no reason to limit the length of such a contract for services to the mayor's term. Rather, such language appears to be intended to permit subsequently elected mayors to enter new contracting arrangements and to release them from the contracting decisions made by a prior administration.

Additionally, as noted above, section 2—222 of the Westmont Code of Ordinances authorizes the *mayor* to retain additional counsel with the consent of the board of trustees. Therefore, regardless of whether section 8—1—7(b) of the Code permits the board of trustees to independently retain additional outside legal counsel, it seems apparent that the board of trustees does not have the authority to take such unilateral action under the applicable village ordinances. As such, we believe that the plaintiffs have presented a fair question as to the al-

leged impropriety of the trustees' contract for legal services with the Kubiesa firm.

Moreover, we note that our analysis is in harmony with the general principles articulated in *Pechous v. Slawko*, 64 Ill. 2d 576, 584-85 (1976), and *Village of Round Lake Beach v. Brenner*, 107 Ill. App. 3d 1, 6-7 (1982). In *Pechous*, our supreme court held that the legislative body of a municipality could not enact an ordinance removing appointed individuals from the municipal offices of superintendent of streets, commission of public works, city collector, and city attorney and unilaterally appoint replacements for several of these officers. *Pechous*, 64 Ill. 2d at 580, 584-85. The supreme court noted the ordinances impermissibly interfered with the exclusive right of the mayor to appoint and remove municipal officers. *Pechous*, 64 Ill. 2d at 584-85. In *Round Lake Beach*, this court held that a mayor had the power to appoint a temporary successor to the office of chief of police without the consent of the board of trustees and that the board had no authority to enact an ordinance depriving the mayor of this power. *Round Lake Beach*, 107 Ill. App. 3d at 6-7. Although we acknowledge that the action taken by the trustees herein was not as extreme as that exercised in either *Pechous* or *Round Lake Beach*, we nonetheless believe that these cases are demonstrative of a mayor's broad authority to appoint and remove municipal officers.

Having established that the plaintiffs have raised a fair question as to their right to the relief sought in their complaint, we briefly consider whether the plaintiffs have satisfied the remaining requirements for the entry of a preliminary injunction. Specifically, the plaintiffs were required to demonstrate the existence of a right in need of protection, that irreparable injury would occur without the injunction, and that there was no adequate remedy at law. See *Lake in the Hills*, 298 Ill. App. 3d at 182.

Here, the trial court found that Mayor Burke's appointment power was a clearly ascertained right deserving of protection. We agree. As noted above, the statutory provisions of the Code and the village ordinances vest in the mayor the sole authority to appoint or retain a village attorney and special counsel with the consent of the board of trustees. In *Pechous*, our supreme court held that an injunction was proper to prevent the legislative branch of a municipality from encroaching upon and usurping these statutory powers. *Pechous*, 64 Ill. 2d at 584-85.

We also believe that the village, Mayor Burke, and the people of Westmont would suffer irreparable injury if the trustees were permitted to usurp the statutory powers of the village's executive branch. Indeed, we believe that injury must be presumed when the village's

legislative body operates in violation of both state and local law. See generally *Pechous*, 64 Ill. 2d at 584-85. Finally, we believe that the plaintiffs have demonstrated that there is no adequate remedy at law.

In closing, we acknowledge that courts are legitimately reluctant to enjoin the acts of public officials. *Lindsey v. Board of Education*, 127 Ill. App. 3d 413, 422 (1984). However, the issuance of an injunction is proper to prevent public officials from taking actions that are outside the scope of their authority or unlawful. *Lindsey*, 127 Ill. App. 3d at 422. As detailed above, we believe that the plaintiffs have presented a fair question that such unauthorized action occurred in the instant case. We therefore conclude that the trial court did not abuse its discretion in entering the preliminary injunction and preserving the status quo.

For the foregoing reasons, the judgment of the circuit court of Du Page County is affirmed.

Affirmed.

INGLIS and HUTCHINSON, JJ., concur.