AMERICAN FEDERATION OF STATE, COUNTY, AND MUNICIPAL EMPLOYEES, COUNCIL 31, *et al.*, Plaintiffs-Appellees, v. GEORGE RYAN, as Governor of the State of Illinois, *et al.*, Defendants-Appellants (Judy Baar Topinka, as Treasurer of the State of Illinois, *et al.*, Defendants).

Fourth District   No. 4—02—0527

Opinion filed July 10, 2002.

James E. Ryan, Attorney General, of Chicago (Joel D. Bertocchi, Solicitor General, and J. William Roberts and Steven M. Puiszis, Special Assistant Attorneys General, of counsel), and Michael J. Leech, of Hinshaw & Culbertson, of Chicago, for appellants.

Stephen A. Yokich, of Cornfield & Feldman, of Chicago, for appellees.

JUSTICE STEIGMANN delivered the opinion of the court:

In January 2002, the American Federation of State, County, and Municipal Employees, Council 31 (AFSCME), Don Todd, Larry Bomke, and Norlan and Eleanor Newmister (plaintiffs), filed a complaint for declaratory and injunctive relief against George Ryan, Governor of the State of Illinois, and Linda Renee Baker, Secretary of the Illinois Department of Human Services (defendants), as well as Judy Baar Topinka, Treasurer of the State of Illinois, and Daniel Hynes, Comptroller of the State of Illinois, to stop defendants' plans to close the Lincoln Developmental Center (Center).

In July 2002, the trial court issued a temporary restraining order

prohibiting defendants from involuntarily transferring residents out of the Center until the Health Facilities Planning Board (Planning Board) has acted upon defendants' application for a permit to close the Center. Defendants filed a petition for interlocutory review, arguing that the temporary restraining order should be reversed on the following grounds: (1) the trial court lacks jurisdiction to modify a judgment on appeal; (2) the temporary restraining order violates separation of powers; (3) the temporary restraining order violates sovereign immunity; (4) no verified complaint pleads facts demonstrating a right to injunctive relief; (5) the Illinois Health Facilities Planning Act (Planning Act) (20 ILCS 3960/1 through 19.6 (West 2000)) was not intended to control the day-to-day operations of a health-care facility; (6) plaintiffs failed to exhaust administrative remedies; (7) plaintiffs lack standing to sue; (8) the Planning Act does not expressly or impliedly create a private right of action; and (9) private persons are not authorized to seek injunctive relief to enforce the permit requirements of the Planning Act. Because we agree with the last argument, we reverse the temporary restraining order and remand.

## I. BACKGROUND

The Center is 1 of 11 State-operated facilities for the developmentally disabled in Illinois. These facilities generally serve as a placement of "last resort" for developmentally disabled individuals whose needs are unmet by private providers. The Office of Developmental Disabilities manages the Center as part of the Illinois Department of Human Services.

### A. Downsizing and Closure Plans

In September 2001, the Illinois Department of Public Health completed a survey of the Center and found it to be out of compliance with several conditions of participation in the Medicaid program, jeopardizing federal financial participation. The survey identified deficiencies in client protections (failure to insure the health, safety, and well-being of residents), active treatment (failure to provide a continuous, aggressive series of services), governing body (failure to follow own policies and procedures), and staffing. At that time, the Center had 372 residents.

In October 2001, Governor Ryan's office issued a press release describing a plan to improve the Center's operations, in part by transferring 90 residents to other placements. In November 2001, the Illinois Department of Public Aid and the Illinois Department of Public Health issued a notice of intent to decertify the Center from participation in Medicaid. In December 2001, Governor Ryan visited the Center and ordered the Center to close its Coty building and transfer 42 more

residents. In January 2002, Governor Ryan's office directed Secretary Baker to develop two alternative plans to either close or downsize the Center.

In February 2002, Governor Ryan decided to downsize the Center to 100 residents. At that time, the Center had 259 residents. The Center would transfer the residents either to other State-operated facilities or to State-funded private providers. Funding existed to build four group homes at the Center within the next year to accommodate a total of 40 residents. Six more cottages were planned to accommodate the remaining 60 residents so that the existing buildings at the Center could be closed.

In March 2002, after consultation with federal regulators, the Illinois Department of Human Services, the Illinois Department of Public Aid, and the Illinois Department of Public Health agreed to voluntarily reduce the Center's population to 100 residents. The administrative proceedings to decertify the Center would be terminated, and after June 30, 2002, a single, full certification survey would be conducted with no further right to hearing, administrative review, or appeal.

In June 2002, Governor Ryan announced a decision to close the Center, and Secretary Baker filed an application with the Planning Board to obtain a permit to close the Center. The first stage of the closure plan involved transferring 51 residents from the Center during the first week of July.

## B. Court Proceedings

In January 2002, plaintiffs filed a two-count complaint against defendants to prevent them from closing the Center. AFSCME is a labor organization that represents a majority of the Center's staff. Todd is president of AFSCME Local 425 and an employee of the Center. State Senator Bomke represents the 55th Senatorial District. The Newmisters are legal guardians of their son, Melvin, who has resided at the Center for 30 years. Count I of the complaint sought a declaratory judgment and a writ of *mandamus* to require defendants to honor the fiscal year 2002 appropriations law and spend money to keep the Center open. Count II sought an injunction restraining defendants from closing the Center until they have received a permit from the Planning Board. Plaintiffs filed a motion for a temporary restraining order, which the trial court denied. In February 2002, defendants filed a motion to dismiss. The trial court dismissed count I and granted plaintiffs leave to refile.

In March 2002, plaintiffs filed a two-count amended complaint setting forth the same causes of action as the original complaint.

Plaintiffs filed a motion for preliminary injunction. In April 2002, the trial court entered a preliminary injunction, requiring defendants to apply for a permit from the Planning Board prior to proceeding with any plans to downsize the Center. Defendants filed an interlocutory appeal, which we docketed as No. 4—02—0390. Following Secretary Baker's application for a permit from the Planning Board, we dismissed the appeal as moot. *American Federation of State, County & Municipal Employees, Council 31 v. Ryan*, No. 4—02—0390 (July 2, 2002) (unpublished summary order under Supreme Court Rule 23(c)(3)).

In June 2002, plaintiffs filed a motion for a temporary restraining order. In July 2002, the trial court granted plaintiffs' motion and prohibited defendants from involuntarily transferring any residents from the Center until the Planning Board has approved the application for a permit to close the Center. This appeal followed.

## II. ANALYSIS

### A. Standard of Review

■ Review of a temporary restraining order is limited to determining whether the trial court abused its discretion. *Northwestern Steel & Wire Co. v. Industrial Comm'n*, 254 Ill. App. 3d 472, 476, 627 N.E.2d 71, 74 (1993). Ordinarily, substantive issues in the case can be considered only to the extent necessary to determine whether the trial court abused its discretion. *Northwestern Steel*, 254 Ill. App. 3d at 476, 627 N.E.2d at 74. However, when a trial court grants temporary injunctive relief, the reviewing court may also examine whether the plaintiff's complaint is sufficient to sustain an injunction (*Strata Marketing, Inc. v. Murphy*, 317 Ill. App. 3d 1054, 1062, 740 N.E.2d 1166, 1172 (2000)), as the right to injunctive relief necessarily brings into question the sufficiency of the complaint (*Olympic Federal v. Witney Development Co.*, 113 Ill. App. 3d 981, 984, 447 N.E.2d 1371, 1373 (1983)).

### B. Planning Act

■ The Center qualifies as a "hospital" under the Planning Board's regulations (77 Ill. Adm. Code § 1100.220 (Conway Greene CD-ROM June 2002)) because it is a State-operated facility utilized for the treatment of physical and mental ills. A "hospital" is within the scope of the Planning Act's definition of "health[-]care facility" (20 ILCS 3960/3 (West 2000)).

■ The purpose of the Planning Act is to "establish a procedure designed to reverse the trends of increasing costs of health care resulting from unnecessary construction or modification of health[-]care

facilities." 20 ILCS 3960/2 (West 2000). In furtherance of this purpose, section 4 of the Planning Act (20 ILCS 3960/4 (West 2000)) creates the Planning Board and governs its duties and functions. Section 5 of the Planning Act (20 ILCS 3960/5 (West 2000)) provides that no person may construct or modify a health-care facility without first obtaining a permit from the Planning Board.

The Planning Act contains investigatory and enforcement provisions. The Planning Board or the Illinois Department of Public Health may investigate permitless construction or modification of a health-care facility. 20 ILCS 3960/13 (West 2000). Any person constructing or modifying a health-care facility without a permit is guilty of a business offense and may be fined up to $25,000. 20 ILCS 3960/14 (West 2000). The Planning Board is also authorized to impose fines. 20 ILCS 3960/14.1 (West 2000). Further, section 15 of the Planning Act (20 ILCS 3960/15 (West 2000)) provides:

"Notwithstanding the existence or pursuit of any other remedy, the [Planning Board] or the [Illinois Department of Public Health] may, in the manner provided by law, *upon the advice of the Attorney General who shall represent* the [Planning Board] or the [Illinois Department of Public Health] in the proceedings, maintain an action *in the name of the State for injunction* or other process against any person or governmental unit *to restrain* or prevent the acquisition of major medical equipment, or the establishment, *construction or modification of a health[-]care facility without the required permit*, or to restrain or prevent the occupancy or utilization of the equipment acquired or facility which was constructed or modified without the required permit." (Emphases added.)

The General Assembly has expressly limited the exercise of home-rule power under the Planning Act. Section 17 of the Planning Act (20 ILCS 3960/17 (West 2000)) states:

"It is hereby specifically declared that the *powers and functions exercised and performed by the State pursuant to this Act are exclusive to the State of Illinois* and that these powers and functions shall not be exercised, either independently or concurrently, by any home[-]rule unit." (Emphasis added.)

### C. Temporary Restraining Order

Defendants argue that the temporary restraining order should be reversed because private persons are not authorized to seek injunctive relief to enforce the permit requirements of the Planning Act. We agree because, under section 17 of the Planning Act (20 ILCS 3960/17 (West 2000)), the General Assembly intended to grant the State exclusive enforcement powers.

■ A court's primary function in interpreting a statute is to

determine and give effect to the legislature's intent in enacting the statute, and legislative intent is best determined by the language of the statute. *People v. Ferrell*, 277 Ill. App. 3d 74, 77, 659 N.E.2d 992, 995 (1995). A court construing a statute should read it as a whole and give the statutory language its plain meaning. *Ferrell*, 277 Ill. App. 3d at 77, 659 N.E.2d at 995. A statute should be construed, if possible, so that no term is rendered superfluous or meaningless. *Texaco-Cities Service Pipeline Co. v. McGaw*, 182 Ill. 2d 262, 270, 695 N.E.2d 481, 485 (1998).

■ Reading the Planning Act as a whole, the plain meaning of sections 15 and 17 of the Planning Act confers upon the State the exclusive power to enforce compliance with the Planning Act's permit requirements. Included within this exclusive enforcement power is the ability of the Planning Board or the Illinois Department of Public Health to maintain an action in the name of the State for injunction to restrain the construction or modification of a health-care facility without the required permit. See 20 ILCS 3960/15 (West 2000).

Contrary to plaintiffs' arguments, section 15 of the Planning Act does not contemplate private lawsuits to enforce the Planning Act's permit requirements. Instead, plaintiffs' interpretation would render superfluous the requirement in section 15 that the Planning Board or the Illinois Department of Public Health proceed on the advice of the Attorney General, who shall represent them in the proceedings. The language in section 15, "[n]otwithstanding the existence or pursuit of any other remedy" (20 ILCS 3960/15 (West 2000)), merely enables the Planning Board or the Illinois Department of Public Health to obtain injunctive relief as an additional remedy.

We recognize that, ordinarily, injunctive relief is proper to prevent public officials from taking actions that are outside the scope of their authority or unlawful. See *Village of Westmont v. Lenihan*, 301 Ill. App. 3d 1050, 1060, 704 N.E.2d 891, 898 (1998). However, in this case, the plain language of sections 15 and 17 of the Planning Act clearly preempts plaintiffs from seeking to enjoin defendants to comply with the Planning Act's permit requirements, as enforcement of the Planning Act is an exclusive power of the State.

The trial court abused its discretion in entering the temporary restraining order because plaintiffs' complaint is insufficient to support their request for temporary injunctive relief. As a result of our holding, we need not address defendants' remaining arguments.

## III. CONCLUSION

For the reasons stated, we reverse the temporary restraining order issued and remand for further proceedings.

Reversed and remanded.

JUSTICE APPLETON, specially concurring:

While I concur with the majority opinion that there is no private right of action for an alleged violation of the Planning Act, I write separately to express my belief that each of the plaintiffs lacks standing.

For a party to have standing to sue, that party must be the subject of actual or threatened injury in fact to a legally cognizable interest. *Greer v. Illinois Housing Development Authority*, 122 Ill. 2d 462, 492-93, 524 N.E.2d 561, 574-75 (1988). Plaintiffs have alleged defendants' noncompliance with the Planning Act, the purpose of which has been set forth above.

The legally cognizable interest of AFSCME Council 31 and Don Todd is determined by their contract of employment with the State of Illinois. That contract guarantees the union's members certain rates of compensation and compliance with workplace rules such as seniority and benefits of employment. It has not been alleged, nor can it be, that the union contract guarantees employment in a site-specific facility in perpetuity. As a logical consequence, these plaintiffs have no legally cognizable interest in maintaining either the size (population) or existence of a particular developmental disability treatment facility.

Plaintiff Larry Bomke is an Illinois state senator who represents a portion of the Logan County community. It is immaterial whether he voted in the legislature for or against funding for the Center. He has no legally cognizable interest that was damaged by defendants' actions. Mere disagreement with the Governor's decisions does not give one standing to sue.

As for Norlan and Eleanor Newmister, any injury in fact to them, while more sympathetic, is also lacking. Plaintiffs currently allege that the Department of Health and Human Services is in the process of transferring residents of the developmental center to other facilities before the Planning Board has issued a permit allowing them to do so. No allegation is made that the Newmisters' son is part of that group. As for the closure of the facility, no common-law or statutory right accrues to any party to prevent closure, only a process of review and permit to regulate such actions.

In recent years, the State of Illinois has closed numerous mental health facilities, driver's service facilities, correctional facilities, and

other such institutions. Each such closure involved dislocation of employees, an inconvenience to the population served, and diminution in the ready availability of service to the location of the abandoned site. Yet a recipient of state services has no legally cognizable interest in maintaining a site-specific location of such services.

While there is some authority that a statutory violation grants standing to anyone arguably within the zone of interests sought to be protected by the statute in question (*Association of Data Processing Service Organizations, Inc. v. Camp*, 397 U.S. 150, 153, 25 L. Ed. 2d 184, 188, 90 S. Ct. 827, 830 (1970)), our supreme court has expressly deleted the zone-of-interest test for standing from Illinois jurisprudence (*Greer*, 122 Ill. 2d at 492, 524 N.E.2d at 574). *Greer* reversed, *sub silentio*, the use of the zone-of-interest test adopted by the First District in *Cottage-63rd Street Currency Exchange, Inc. v. Callahan*, 104 Ill. App. 3d 586, 589, 432 N.E.2d 1258, 1260 (1982) (where injury arises from violation of a statute, standing requires plaintiff to be one of a class designed to be protected by the statute).

Without reference to a zone of interest created by the Planning Act, plaintiffs have no standing because they have no legally cognizable interest which has been damaged by the actions alleged to have been committed by these defendants in violation of the Act.

JUSTICE MYERSCOUGH, dissenting:

I respectfully dissent. The Planning Act does not clearly preempt the plaintiffs' private right of action. The Planning Act creates a specific right for the Planning Board or agency to seek an injunction prohibiting modification without a permit, but also specifically recognizes the existence or pursuit of other remedies:

"Notwithstanding the existence or pursuit of any other remedy, the State Board or the Agency may, in the manner provided by law, upon the advice of the Attorney General who shall represent the State Board or the Agency in the proceedings, maintain an action in the name of the State for injunction or other process against any person or governmental unit to restrain or prevent the acquisition of major medical equipment, or the establishment, construction[,] or modification of a health[-]care facility without the required permit, or to restrain or prevent the occupancy or utilization of the equipment acquired or facility which was constructed or modified without the required permit." 20 ILCS 3960/15 (West 2000).

The Planning Act concededly declares the powers and functions exercised and performed by the State to be exclusive to the State and specifically prohibits home-rule units from exercising those powers and functions:

"It is hereby specifically declared that the powers and functions exercised and performed by the State pursuant to this [Planning] Act are exclusive to the State of Illinois and that these powers and functions shall not be exercised, either independently or concurrently, by any home[-]rule unit." 20 ILCS 3960/17 (West 2000).

However, nowhere does the Act prevent anyone, even a home-rule unit, from maintaining an action for injunction to require compliance with the Planning Act. This section merely limits the use of the Planning Act's regulatory powers to the State, not home-rule units. Clearly, section 17 creates exclusivity of the Planning Board's and Illinois Department of Public Health's powers and duties as set forth in section 12 (powers and duties of the Planning Board) and section 12.2 (powers of the agency). In other words, the City of Lincoln cannot regulate health-care facilities in the manner set forth in the Planning Act. But, certainly, any individuals harmed by a failure to comply with the Planning Act may sue for an injunction and compliance with the Planning Act.

The Planning Act obviously contemplated a private right of action for individuals adversely affected by decisions of the Planning Board:

"Any person who is adversely affected by a final decision of the [Planning] Board may have such decision judicially reviewed. The provisions of the Administrative Review Law, as now or hereafter amended, and the rules adopted pursuant thereto shall apply to and govern all proceedings for the judicial review of final administrative decisions of the [Planning] Board. The term 'administrative decisions' is as defined in Section 3—101 of the Code of Civil Procedure." 20 ILCS 3960/11 (West 2000).

Surely, if a prisoner can sue for *mandamus* to ensure the Department of Corrections' (DOC's) compliance with DOC administrative rules governing grievance procedures, the guardians of residents at the Lincoln Developmental Center can sue for compliance with the closure proceedings set forth in the Planning Act. Moreover, since plaintiffs here are seeking to force public officials to comply with the law and are not seeking tort damages they are, therefore, entitled to request injunctive relief. Reversal is, therefore, not warranted, because the plaintiffs clearly have a private right of action. See *Noyola v. Board of Education of the City of Chicago*, 179 Ill. 2d 121, 688 N.E.2d 81 (1997) (Plaintiffs seeking to force the public officials to do what the law requires may proceed by *mandamus* to compel them to do so).

As quoted above, the Planning Act creates public rights which may be enforced by those affected by its decisions. 20 ILCS 3960/11 (West 2000). Additionally, the purpose of the Planning Act is to "improve the financial ability of the public to obtain necessary health

services, and to establish an orderly and comprehensive health[-]care delivery system which will guarantee the availability of quality health care to the general public." 20 ILCS 3960/2 (West 2000). The public is the stated intended beneficiary of the Planning Act, and clearly the plaintiffs here have standing to sue.

As members of the public, these plaintiffs have a protectible interest in ensuring that public officials follow the requirements of public statutes. *Local 1894 v. Holsapple*, 201 Ill. App. 3d 1040, 1049, 559 N.E.2d 577, 583 (1990); *Hill v. Butler*, 107 Ill. App. 3d 721, 724-25, 437 N.E.2d 1307, 1311 (1982) (citizens have right to bring *mandamus* action to enforce public rights set forth in statute). Moreover, these guardians of residents and employees of the facility clearly have standing to sue for the defendants' alleged contravention of a clearly mandated public policy and statutory procedure.

Finally, the trial court did not abuse its discretion in issuing this injunction. I would affirm and remand.