(No. 46098.—

VILLAGE OF STREAMWOOD POLICE DEPARTMENT, Appellee, v. THE INDUSTRIAL COMMISSION *et al.*—(Charles B. Gibbons, Appellant.)

*Opinion filed May 29, 1974.*

Mann & Rifken, and William J. Harte, both of Chicago, for appellant.

Kane, Doy & Harrington, of Chicago (Arthur O. Kane, of counsel), for appellee.

MR. CHIEF JUSTICE UNDERWOOD delivered the opinion of the court:

This is an appeal from a judgment of the circuit court of Cook County reversing the Industrial Commission's award of workmen's compensation benefits to the claimant, Charles W. Gibbons, for injuries sustained in the performance of his duties as a police sergeant for the Village of Streamwood.

The claimant testified that on July 3, 1969, while on squad-car patrol duty, he and his partner responded to a call to assist the owner of a car wash who had locked himself out. While attempting to pry open a door with a crowbar at the request of the owner, claimant slipped and fell backwards onto a cement floor. He experienced immediate pain in his lower back and legs. Although he was able to complete his regular shift that day, his partner had to take over the driving duties for him. He reported the incident to his supervisor at the conclusion of the work day.

Commencing July 7 he returned to work for a week but continued to have extreme back pains, muscle spasms and pins-and-needles sensations in his right leg. From July 15 to July 30 he took his regular two-week vacation and spent most of the time lying flat on his back. He attempted to get medical assistance during his vacation but was unable to obtain an appointment until the first week in August. On August 1 he returned to work but had a great deal of difficulty in moving due to increasingly severe pain. On August 14 he was put in traction in his own home under the care of a doctor and did not return to work with the Village thereafter, since the pain had reached the point where he "just couldn't continue working." Claimant continued to receive his full salary from the Village until

October 23, 1969, and subsequently received payments from the Policemen's Pension Fund, to which the Village had made contributions.

He further testified that prior to his fall on July 3, he had never experienced any back problems, although he had suffered a head injury in a fall in his boat on June 15 for which he received medical treatment.

The claimant first received treatment for his back condition on August 7, 1969, from Dr. Robert M. McCollom, a chiropractor, who took X rays and prescribed ultrasound treatments. He continued to see Dr. McCollom thereafter on an almost daily basis through the date of the arbitration hearing in January, 1971. Claimant also was examined by other doctors at the request of the Village and its workmen's compensation carrier.

Testifying on behalf of the claimant, Dr. McCollom gave a detailed description of the treatment he had given claimant since he first saw him on August 7, 1969. On cross-examination it was brought out that Dr. McCollom's written history had at first indicated that the claimant's back injuries resulted from a fall around August 1. Dr. McCollom later changed the date in his records at claimant's request when he realized he had erroneously assumed that claimant was referring to August rather than July when claimant told him the incident had occurred "around the first of the month." On the basis of X rays and various other objective tests he had performed, Dr. McCollom diagnosed claimant's condition as a herniated disc. He was of the opinion that the condition had been caused by the fall on July 3, that it was of a permanent nature and that claimant could not return to duties as a police sergeant.

Dr. Carlo Scuderi, an orthopedic surgeon, also diagnosed a herniated disc which in his opinion prevented claimant from carrying on his normal duties with the police department. In response to a hypothetical question,

he gave his opinion that there was a causal connection between the July 3, 1969, accident and the claimant's subsequent state of ill being.

In presenting its defense, the Village introduced a September, 1969, report prepared by Dr. McCollom showing his early findings. The Village also introduced a copy of a 1957 Village ordinance pertaining to the creation of the police department.

At the conclusion of the hearing the arbitrator found that the claimant was entitled to an award of $91 per week for a period of 70 weeks for temporary total incapacity for work together with the sum of $1,417 for necessary medical expenses. Pursuant to section 8(j) of the Workmen's Compensation Act (Ill. Rev. Stat. 1969, ch. 48, par. 138.8(j)) the Village was given credit against its liability for temporary compensation benefits in the amount of $6,135.52 representing the payments claimant received under the Policemen's Pension Fund. On review by the Commission, at which no additional evidence was heard, the Commission entered a decision affirming the arbitrator's findings and award as to claimant's incapacity for work and medical expenses but disallowed the Village any credit for the pension payments received by claimant. On *certiorari,* the circuit court reversed the decision of the Commission in its entirety upon a finding that the claimant was not an employee of the Village of Streamwood within the meaning of the Workmen's Compensation Act. It is from this judgment that claimant appeals.

The decision of the circuit court that claimant was not an employee of the Village of Streamwood is based upon its determination that claimant was an "official" of the Village of Streamwood and therefore excepted from coverage pursuant to section 1(b) of the Workmen's Compensation Act (Ill. Rev. Stat. 1969, ch. 48, par. 138.1(b)). That section defines "employee" in pertinent part as including every person in the service of an incorporated village, under appointment or contract of

hire, express or implied, oral or written, *except any official of* the *incorporated village.* For the reasons hereafter stated we do not concur with the circuit court that claimant was an "official" of the Village of Streamwood within the purview of the foregoing provision.

As we recently pointed out in *County of Cook v. Industrial Com.* (1973), 55 Ill.2d 540, a policeman is not an "official" of the municipality he serves for purposes of section 1(b) of the Act in the absence of a statute or ordinance specifically creating an office for the position in question. (*Krawiec v. Industrial Com.* (1939), 372 Ill. 560; *Murphy v. Industrial Com.* (1934), 355 Ill. 419; *City of Metropolis v. Industrial Com.* (1930), 339 Ill. 141; *Johnson v. Industrial Com.* (1927), 326 Ill. 553.) We find no specific creation of the office of police sergeant in the Village of Streamwood ordinance pertaining to the Village's police department. Section 5.001 creates a police department and provides in general terms that it "shall consist of a chief of police, who shall be Director of Public Safety in the Village, and one captain, one lieutenant, three sergeants, one policewoman, and such patrolmen and part time patrolmen, and part time policewomen, as may be provided for from time to time by the President and Board of Trustees." Section 5.002 specifies the duties of all members of the police department. Section 5.003 specifically creates the office of chief of police in the following language: "There is hereby created the office of the Chief of Police." Section 5.004 specifies the duties of the chief of police. The distinction in wording between the general references in section 5.001 to the various positions in the police department and the specific creation of the office of chief of police in section 5.003 can readily be seen. Had the framers of the ordinance intended to create the office of police sergeant, we can only presume that they would have done so by using the same language as that to create the office of chief of police. The fact that they did not do so permits no other conclusion than that

the position of police sergeant occupied by the claimant was not an office and that he was therefore not an official of the Village of Streamwood for purposes of section 1(b) of the Workmen's Compensation Act.

The Village contends that in any event the decision of the Industrial Commission finding that claimant was disabled as a consequence of accidental injuries sustained on July 3, 1969, is not supported by the evidence and must be set aside. In so arguing the Village suggests that the length of time between the alleged accident and the date claimant first saw Dr. McCollom, when considered with the fact that Dr. McCollom first noted in the history he took from claimant that the accident had occurred about August 1, shows that the correlation between the accident of July 3 and the back injury was an afterthought concocted by claimant.

Questions of credibility of the witnesses and of fact, including causal connection, are primarily within the province of the Industrial Commission, whose findings on those matters will not be set aside unless contrary to the manifest weight of the evidence. (*Wade v. Industrial Com.* (1973), 55 Ill.2d 587; *Ford Motor Co. v. Industrial Com.* (1973), 55 Ill.2d 549; *Owens-Illinois Glass Co. v. Industrial Com.* (1968), 39 Ill.2d 312.) In the case before us the testimony is largely undisputed as to the fact that the claimant fell on July 3, that subsequent thereto he was suffering from a disabling back injury diagnosed as a herniated disc, that such a condition could have been caused by a fall such as he described, and that his condition was such that he could not return to work. Reasonable explanations were offered for the delay between the date of the fall and the date medical attention was first received, as well as for Dr. McCollom's apparent misunderstanding as to which month claimant was referring to when he said he fell around the first of the month. Upon consideration of all the evidence we are not persuaded that claimant's testimony is so implausible as to

require a finding that the Commission's award of compensation is against the manifest weight of the evidence.

We turn next to the question of whether the Village should be allowed credit for payments received by claimant under the Village's police pension fund. As previously noted, the arbitrator allowed the Village credit for such payments, but on review the Industrial Commission determined to the contrary. We first consider the applicability of section 8(j)(1) of the Act, on which both parties rely in support of their respective positions. That section provides in pertinent part:

> "In the event the injured employee receives benefits, including medical, surgical or hospital benefits under any group plan covering nonoccupational disabilities contributed to wholly or partially by the employer, which benefits should not have been payable if any rights of recovery existed under this Act, then such amounts so paid to the employee from any such group plan \*\*\* shall be credited to or against any compensation payment for temporary total incapacity for work or any medical, surgical or hospital benefits made or to be made under this Act. \*\*\* This paragraph does not apply to payments made under any group plan which would have been payable irrespective of an accidental injury under this Act." (Ill. Rev. Stat. 1969, ch. 48, par. 138.8(j)(1).)

We believe it is apparent that the foregoing credit provisions are inapplicable to this case, where there has been no showing that the Policemen's Pension Fund benefits are limited to occupationally related disabilities. Presumably they are not, and therefore the last sentence of the quoted language renders the entire paragraph inapplicable.

The other provision which is germane to the issue of whether credit should be allowed is that part of section 1(b)1 which provides with respect to persons in the service of the State and certain of its political subdivisions that:

> "Any such employee, his personal representative, widow, children, beneficiaries or heirs who is, are or shall be entitled to receive a pension or benefit for or on account

of disability or death arising out of or in the course of his employment from a pension or benefit fund to which the State or any county, town, township, incorporated village, school district, body politic, underwriters' fire patrol or municipal corporation therein is a contributor, in whole or in part, shall be entitled to receive only such part of such pension or benefit as is in excess of the amount of compensation recovered and received by such employee, his personal representative, widow, children, beneficiaries or heirs under this Act." (Ill. Rev. Stat. 1969, ch. 48, par. 138.1(b)1.)

While this provision clearly limits an employee's right to receive pension benefits to that amount which is in excess of workmen's compensation benefits recovered and received, it does not purport to establish a credit against an employer's statutory obligation to pay workmen's compensation benefits. It may well be in this case that the claimant has received payments from the Policemen's Pension Fund to which he was not entitled under the foregoing provisions of section 1(b)1. However, no question has been raised as to whether under such circumstances the Village's workmen's compensation carrier should be required to reimburse the pension fund for those amounts received from the fund by claimant as to which he was not entitled or whether some other similar adjustment should be made. With respect to the issue which we have been called upon to decide, we conclude that under the facts of this case there is no statutory authority for allowing the Village credit against its obligation to claimant under the Workmen's Compensation Act.

The judgment of the circuit court of Cook County is reversed, and the award of the Industrial Commission is reinstated.

*Judgment reversed; award reinstated.*