THE VILLAGE OF ROUND LAKE BEACH *et al.*, Plaintiffs-Appellants, *v.* RODNEY BRENNER *et al.*, Defendants-Appellees.

Second District    No. 82-17

Opinion filed June 8, 1982.

Berle L. Schwartz and Andi S. Goldfine, both of Highland Park, for appellants.

Michael J. Cummins, of Waukegan, and William J. Stogsdill, of Kowalczyk and Stogsdill, of Glen Ellyn, for appellees.

2

PRESIDING JUSTICE SEIDENFELD delivered the opinion of the court:

The Village of Round Lake Beach, by four of its trustees, sought a declaratory judgment that Rodney Brenner, the mayor of the village, lacked the authority to appoint Peter L. Dakuras as temporary successor to the office of chief of police without the advice and consent of the board of trustees of the village. The village also sought a temporary restraining order and a preliminary injunction. The mayor counterclaimed requesting a declaratory judgment that he had the power of temporary appointment and that the board had no authority to amend an ordinance so as to deprive him of that power. The temporary restraining order against the mayor was subsequently dissolved. Preliminary injunctive relief was denied. The court further restrained the board of trustees from amending the ordinance governing appointment of any village officer. The village appeals.

We first consider the motion of the defendants to dismiss the appeal, which we have taken with the case. The mayor and Dakuras contend principally that the appeal is premature because the motion to dismiss the complaint for declaratory judgment for failure to state a cause of action remains pending in the trial court so that the merits have not been determined. We deny the motion. The trial court's order of December 24, 1981, which dissolved the temporary restraining order and also denied the plaintiffs' motion for a preliminary injunction was based on the recited finding "that the Defendant Brenner lawfully appointed Defendant Dakuras to the office of Temporary Chief of Police on December 2, 1981." The order dated December 31, 1981, which enjoined the village board from enacting any ordinance which would remove the power of the mayor to appoint recited that it came on for hearing on the counter-complaint for declaratory judgment which both parties had agreed to have proceed to hearing on December 24; confirmed its previous finding that the village was not a commission form of government and not a home rule unit, that the chief of police is a village officer; found that the only form of municipal government which authorized the city council or the board of trustees of the village to exercise the powers of appointment and removal is the commission form; noted that the board had sought to remove the power to appoint from the mayor and was planning to over-ride the mayor's veto of that ordinance and enjoined the board from enacting any such ordinance.

■■ The test applied to whether litigation has been terminated in the trial court is one of substance, not mere form. (*People ex rel. Pollution Control Board v. Fry Roofing Co.* (1972), 4 Ill. App. 3d 675, 678.) We conclude that the trial court did reach the merits of the declaratory judgment action filed by the village by ruling on the legal questions which were raised in

the defendants' counterclaim for declaratory judgment. This ruling disposes of all of the grounds raised in the motion to dismiss. There are no remaining factual issues pending in the trial court and the December 31 order ruled on the issue as a question of law involving the construction of the applicable statutes. The trial court's orders had the effect of disposing of the entire controversy on its merits and we will therefore proceed to review the cause.

It is conceded that the village is a non-home-rule unit and has not adopted the commission form of government. It further appears undisputed that the village, by local ordinance 62—22, has adopted and is governed by section 10—2.1—1 *et seq.* of the Illinois Municipal Code (Ill. Rev. Stat. 1979, ch. 24, par. 10—2.1—1 *et seq.*). Mayor Brenner claims the power of temporary appointment pursuant to sections 3—7—1 and 3—7—2 of the Illinois Municipal Code, which provide, as pertinent:

> "Instead of providing for the election of the following officers * * *, the city council, in its discretion, may provide by ordinance * * * *for the appointment by the mayor, with the approval of the city council,* of a city collector, a city marshal, a city superintendent of streets, a corporation counsel, a city comptroller, or any of them, and any other officers which the city council considers necessary or expedient. * * * [T]he city council, by a like vote, may discontinue any office so created, * * *." (Emphasis added.) (Ill. Rev. Stat. 1979, ch. 24, par. 3—7—1.)

> * * *

> "Unless otherwise specifically provided by statute, all officers of any city shall be appointed by the mayor by and with the advice and consent of the city council. Vacancies in all such city offices may be filled in the same manner. * * *

> * * * *If such officer ceases to perform the duties of or to hold his office * * * the mayor may appoint a temporary successor to the officer.*" (Emphasis added.) (Ill. Rev. Stat. 1979, ch. 24, par. 3—7—2.)

The trial court's ruling was based on these provisions and its consideration of *Pechous v. Slawko* (1976), 64 Ill. 2d 576, which it found controlling.

We begin our analysis with reference to section 3—8—1 of the Illinois Municipal Code whereby the president appoints village officers "with the advice and consent" of the board of trustees (Ill. Rev. Stat. 1979, ch. 24, par. 3—8—1). This statute does not mention any temporary appointive power; however, by section 3—12—2 the president "except as otherwise provided in this Code, shall have the same powers * * * as the mayor of a city." (Ill. Rev. Stat. 1979, ch. 24, par. 3—12—2.) Thus a village president, having appointed a temporary successor to village office, may claim

that he is acting with the same power by section 3—12—2 as vests by section 3—7—2 in the mayor.

Plaintiffs point out that such appointments are limited to "offices," and contend that by local ordinance 4—1—1 the chief of police is not a village officer whose appointment is subject to the Illinois Municipal Code, but rather that the ordinance authorizes only a place of employment:

> "4—1—1. Department Created
>
> There is hereby continued, created and established an executive department of the Village, to be known as the Police Department. The Police Department *may* consist of one Chief of Police, five (5) Sergeants, twelve (12) Patrolmen and *such other special* patrolmen, patrolwomen, watchmen and employees as may be lawfully provided from time to time." (Emphasis added.)

We agree that the office of policeman is unknown at common law and exists only when fixed by statute or ordinance (*Kelly v. Chicago Park District* (1951), 409 Ill. 91, 96-97; *Krawiec v. Industrial Com.* (1939), 372 Ill. 560, 563), but further determine that the chief of police by statute and ordinance holds a village office. Generally, an office is a place in a governmental system created or recognized by the law of the State, which either directly or by delegated authority assigns to the incumbent the continuous performance of certain permanent public duties. See *People ex rel. Jacobs v. Coffin* (1918), 282 Ill. 599, 606.

By local ordinance 4—1—5(a), pertaining to his duties, the chief of police "shall be the chief executive officer of the Police Department. He shall devote his whole time to the duties of this office * * *." And further, that "[b]efore entering upon the duties of his office, the Chief of Police shall execute his bond * * *."

Moreover, it appears by the last paragraph of section 10—2.1—4 of the Illinois Municipal Code[1] that any full-time member of a regular police department in a municipality subject to division 2.1 is a "city officer." This provision has been interpreted to establish a municipal office in the absence of an ordinance creating the office of policeman. *People ex rel. Siegal v. Rogers* (1947), 397 Ill. 187, 193-94. See also *City of Danville v. Industrial Com.* (1967), 38 Ill. 2d 479, 485.

From the ordinance and statute above, we conclude that the village office of chief of police has been created and is to be filled subject to the Illinois Municipal Code.

Under the Code, plaintiffs contend that section 10—2.1—4 withdrew the president's power of appointment to the office:

---

[1] "Any full time member of a regular fire or police department of any municipality which comes under the provisions of this Division or adopts this Division 2.1 or which has adopted any of the prior Acts pertaining to fire and police commissioners, *is a city officer*." (Emphasis added.) Ill. Rev. Stat. 1979, ch. 24, par. 10—2.1—4.

"Sec. 10—2.1—4. *Fire and police departments—Appointment of members—Certificates of appointments*. The board of fire and police commissioners shall appoint all officers and members of the fire and police departments of the municipality, including the chief of police and the chief of the fire department, unless the council or board of trustees shall by ordinance as to them otherwise provide; * * *." (Emphasis added.) (Ill. Rev. Stat. 1979, ch. 24, par. 10—2.1—4.)

Plaintiffs contend that it is unlikely that the legislature intended to reserve a power of temporary appointment in the president when he can exercise the appointive power only if the trustees by ordinance so provide; and further, that under section 10—2.1—16 of the Act,[2] the power to make temporary appointments resides in the Board of Fire and Police Commissioners.

The answer to plaintiffs' argument is that the above provision by which the Board of Fire and Police Commissioners appoints all officers and members of the police department, including the chief, unless the trustees by ordinance otherwise provide, authorizes the trustees to exclude the appointment of the police chief from the Board of Fire and Police Commissioners' appointments. (See *Edwards v. City of Marion* (1970), 130 Ill. App. 2d 895, 901; *cf. Bovinette v. City of Mascoutah* (1973), 55 Ill. 2d 129, 132 (exception relates solely to appointment and not to discharge of police chief).) First in 1963, again in 1967, and most recently in 1980, the trustees by ordinance each time excluded the appointment of the police chief from the Board of Fire and Police Commissioners. Instead, the trustees each time chose to follow a clear legislative purpose behind the exclusionary proviso contained in section 10—2.1—4 that enables the village president to carry out the policies of the administration through his own appointee. (See *People ex rel. Cadell v. Board of Fire & Police Commissioners* (1952), 345 Ill. App. 415, 419.) By ordinance 4—1—5(A), the police chief as head of the executive department is subject to orders of the president and trustees, who entrust to him the implementation of policies. In turn, the chief of police issues commands, enforces their timely execution, and by the nature of the office is clothed with a large discretion in deploying and disciplining his officers. (See *Buege v. Lee* (1978), 56 Ill. App. 3d 793, 796; *Conte v. Horcher* (1977), 50 Ill. App. 3d 151, 154.) When the trustees enacted ordinance 4—1—2 and took the appointment of the police chief from the Fire and Police Com-

---

[2] "§10—2.1—16. Temporary appointments. In order to prevent a stoppage of public business, to meet extraordinary exigencies, or to prevent material impairment of either the police or fire department, the board may make temporary appointments, to remain in force until regular appointments may be made under the provisions of this Division 2.1, but never to exceed 60 days." Ill. Rev. Stat. 1979, ch. 24, par. 10—2.1—16.

missioners, the appointment was no longer subject to the Act, including section 10—2.1—16, but general Code provisions applied; and the president could thereafter act with the same appointive power by section 3—12—2 as vests in a city mayor by section 3—7—2 in naming a temporary successor to the office of village chief of police.

The subsequent enactment of an ordinance by the village trustees, amending village ordinance 4—1—2 which was vetoed by the village president but which the trustees planned to re-enact over the veto, presents further issues for resolution. The amended ordinance 4—1—2 provided that the chief of police was a "city employee" to be appointed by a majority of the board of trustees. The trial court, in its order of December 31, 1981, enjoined the board from amending the ordinance so as to deprive the "mayor" of the power of appointment.

The provision which the trustees rely upon for their authority to vest appointment in themselves is the language of section 10—2.1—4 of the Illinois Municipal Code, *"unless the * * * board of trustees shall by ordinance as to them otherwise provide * * *."* (Emphasis added.) Ill. Rev. Stat. 1979, ch. 24, par. 10—2.1—4.

The authority of the trustees to "otherwise provide" does not, in our view, give the board the sole right to make the appointment. In this regard, plaintiffs' reliance on *Dianis v. Waenke* (1975), 29 Ill. App. 3d 133, 144, is misplaced. There this court rejected the contention that the trustees' control of the appointive power by ordinance related back to section 3—8—1 and 3—7—2, which vest the power in the president or mayor. The result reached in *Dianis*, allowing the trustees to make appointments with the president by joint vote, was later disapproved by strong implication in *Pechous v. Slawko* (1976), 64 Ill. 2d 576, 584-85, where our supreme court determined that a city council or board of trustees may assume appointive power only where the municipality has adopted the commission form of municipal government as set out in the Code (Ill. Rev. Stat. 1979, ch. 24, par. 4—1—1 *et seq.*), or where the municipality, if a non-home-rule unit as here, has obtained referendum approval "for [its] officers, manner of selection and terms of office." (Ill. Const. 1970, art. VII, sec. 7(3).) The village, however, has not adopted article 4 of the Municipal Code, nor was the ordinance that was vetoed as amended subject to referendum approval. The trustees were not entitled to disregard the methods prescribed by the Code and the Illinois Constitution for the appointment of village officers (*cf. Mandarino v. Village of Lombard* (1980), 92 Ill. App. 3d 78, 81 (section 10—2.1—4 does not limit a home rule village's power to adopt different procedures for discharge of police chief)).

While *Pechous* did not involve a consideration of the provisions of the Fire and Police Commissioners Act, we believe that its rationale

would not allow the same result as reached by the vetoed ordinance by a first step of the enactment of the Fire and Police Commissioners Act, which might be established by the act of the president of the village, "with the consent of the board of trustees" (Ill. Rev. Stat. 1979, ch. 24, par. 10—2.1—1), and the second step by the trustees of vesting appointive power solely in themselves.

We conclude, however, that the order of December 31, 1981, enjoining the trustees is too broad in that it encompasses "any other village offices" when only the office of chief of police is here involved. The injunction could also fairly be read to prevent the trustees from placing the power to appoint the chief of police back in the Board of Police and Fire Commissioners. The injunction is hereby modified to enjoin the trustees from enacting any ordinance which would place the power of appointment of the chief of police solely in themselves.

■■ The appointment of Dakuras by the village president was valid. The orders denying plaintiffs' declaratory judgment are therefore affirmed. The injunction entered on the village president's countercomplaint is affirmed as modified.

Affirmed as modified.

UNVERZAGT and VAN DEUSEN, JJ., concur.