THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. BRIAN L. CARRIE, Defendant-Appellant.

Fifth District    No. 5—03—0422

Opinion filed June 16, 2005.

Daniel M. Kirwan and Elaine M. Belcher, both of State Appellate Defender's Office, of Mt. Vernon, for appellant.

Patrick Hahn, State's Attorney, of Lawrenceville (Norbert J. Goetten, Stephen E. Norris, and T. David Purcell, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE CHAPMAN delivered the opinion of the court:

The defendant, Brian L. Carrie, was convicted of two counts of threatening a public official (720 ILCS 5/12—9(a) (West 2002)) for directing verbal threats to a municipal police officer and a county dispatcher, incident to his arrest on domestic battery charges. He was sentenced to four years of imprisonment and one year of mandatory supervised release on each count, to run concurrently. He seeks the

reversal of his convictions on the basis that police officers, dispatchers, and correctional officers are not "public officials" as that term is defined in section 12—9 of the Criminal Code of 1961 (the Code) (720 ILCS 5/12—9 (West 2002)). For the following reasons, we reverse Carrie's convictions.

## I. BACKGROUND

On April 24, 2002, Bridgeport police officer Danny Ash responded to a domestic disturbance at Carrie's stepfather's home, where Carrie resided. Carrie's mother and stepfather claimed that Carrie had become intoxicated and belligerent and that he had hit himself about his head and had torn some hair out of the family dog. They also alleged that he had spat on his mother. Carrie had left the scene but turned himself in to the police shortly thereafter, upon learning of their investigation.

Officer Ash arrested Carrie for domestic battery related to the alleged spitting incident. Although he was initially compliant with the arresting officers, he became increasingly belligerent and vocal upon learning that of the participants in the altercation he was the only one under arrest. Carrie's verbal attacks were lengthy and profane. For the purpose of this case, however, we discuss only the threats that formed the basis of the charges brought against him.

The first threat occurred during the ride to the county jail, while Carrie was secured with handcuffs in the backseat of the patrol car behind a security cage. Carrie said to Ash, "I will see you when you're off duty and you're out of uniform and I'll deal with you then." Carrie was placed in the drunk tank when he arrived at the county jail. At around 2:15 a.m. on April 25, 2002, Carrie summoned Lawrence County dispatcher JoAnn Boren to get his cigarettes. When she did not comply with his request, he threatened to follow Boren home to slit her throat.

On April 30, 2002, Carrie was charged by information with two counts of aggravated intimidation pursuant to section 12—6.2(a)(3) of the Code (720 ILCS 5/12—6.2(a)(3) (West 2002)), stemming from the threats he made to Ash and Boren. He was never charged for the alleged domestic battery. The aggravated intimidation statute provides, in part, that a person commits the offense of aggravated intimidation when he commits the offense of intimidation knowing that the victim is a peace officer or correctional employee and the offense is committed while the victim is engaged in his official duties or in retaliation therefor. 720 ILCS 5/12—6.2(a)(3) (West 2002). At Carrie's final pretrial conference, however, the State entered a *nolle prosequi* on the aggravated intimidation counts and filed counts III and IV against

Carrie for threatening a public official in violation of section 12—9 of the Code (720 ILCS 5/12—9 (West 2002)). Count IV describes Boren not as a dispatcher but as a Lawrence County correctional officer. She was presented as such at Carrie's trial because she was attending to inmates in the absence of a correctional officer on duty. The record does not reflect why the State withdrew the aggravated intimidation charges.

A jury trial was held on June 24 and 25, 2002. When the State rested its case, Carrie's counsel moved for a directed verdict on the basis that Ash and Boren were not public officials under the Code. The trial court denied Carrie's motion, finding as a matter of law that a police officer and a correctional officer are public officials under the Code. The court reserved for the jury the question of whether Ash and Boren were public officials, and Carrie's counsel preserved the claimed error by objecting to the relevant jury instructions. The jury returned two guilty verdicts, and Carrie's written posttrial motions were subsequently denied.

Carrie advances four issues on appeal. First, he points to the definition of "public official" in the Code and contends that police officers, correctional officers, and police dispatchers are not public officials because they are not elected to an office or appointed to an office which is established by statute. Second, Carrie argues that the penalties for threatening public officials are unconstitutionally disproportionate when applied to peace officers and correctional employees. Third, Carrie alleges that several instances of prosecutorial misconduct deprived him of a fair trial. Fourth, he claims that his trial counsel was ineffective. We reverse Carrie's convictions because we find as a matter of law that Bridgeport police officers and Lawrence County dispatchers and correctional officers are not "public officials" as defined by section 12—9(b)(1) of the Code (720 ILCS 5/12—9(b)(1) (West 2002)). Because the construction of a statute is a question of law, we apply a *de novo* standard of review. *People v. Carter*, 213 Ill. 2d 295, 301, 821 N.E.2d 233, 237 (2004).

## II. ANALYSIS

In this appeal, we are asked to determine whether police officers, correctional officers, and police dispatchers are "public officials" as that term is defined in the statute creating the offense of threatening public officials (720 ILCS 5/12—9 (West 2002)). When construing a statute, a court is required to ascertain and give effect to the intent of the legislature. The best indication of the legislature's intent is the language of the statute itself. *People v. Carter*, 213 Ill. 2d 295, 301, 821 N.E.2d 233, 237 (2004). In construing a statute, courts should consider

the entire statute and keep in mind its subject and the legislature's objective in enacting it. Moreover, we are required to strictly construe criminal or penal statutes in favor of the defendant, and "nothing should be taken by intendment or implication beyond the obvious or literal meaning of the statute." *People v. Davis*, 199 Ill. 2d 130, 135, 766 N.E.2d 641, 644 (2002).

■ We turn now to the language of the statute to apply the foregoing principles. The statute provides, in part, that a person commits the offense of threatening a public official when he knowingly delivers to a public official a communication containing a threat sufficient to place the official in reasonable apprehension of immediate or future bodily harm and the threat was conveyed because of the performance or nonperformance of some public duty. 720 ILCS 5/12—9(a) (West 2002). The legislature established the following definition:

" 'Public official' means a person who is elected to office in accordance with a statute or who is appointed to an office which is established, and the qualifications and duties of which are prescribed, by statute, to discharge a public duty for the State or any of its political subdivisions or in the case of an elective office any person who has filed the required documents for nomination or election to such office. 'Public official' includes a duly appointed assistant State's Attorney." 720 ILCS 5/12—9(b)(1) (West 2002).

Prior to 1992, the definition enumerated specific offices afforded protection under the Code, including a vast array of state and local legislative, executive, and judicial offices. Ill. Rev. Stat. 1989, ch. 38, par. 12—9(b)(1). Over time, the statute had been amended to increase the number of offices protected, by enumerating additional offices. Police officers and county correctional officers and dispatchers were never specifically enumerated in the definition of a public official under the Code. In 1992, the Code was amended—the listing of specific offices was removed, and it was replaced by the general definition of a public official set forth above. Pub. Act 87—238, eff. January 1, 1992. Legislative committee debate on the amendment reflects that the legislative intent in changing the definition was to include all public officials, resulting in a more consistent application of the offense. 87th Gen. Assem., House Proceedings, April 11, 1991, Committee on Judiciary II (taped debate on House Bill 466).

Carrie poses a broad question on appeal—whether police officers, correctional officers, and dispatchers, in general, are covered under the Code. The language of the statute, however, requires a more narrow review. Because the legislature sought to include only those persons "elected to office in accordance with a statute or *** appointed to an office which is established *** by statute," our determination

may not encompass all police and correctional officers, because some municipalities might have statutorily created or established an office for police and corrections employees and others might not have. In this case, we must decide (1) whether Bridgeport police officers and Lawrence County dispatchers and correctional officers are elected to an office in accordance with a statute or are appointed to an office that is established by statute, (2) whether their qualifications and duties are prescribed by statute, and (3) whether they discharge a public duty for the state or any of its political subdivisions. We conclude that they are not public officials as contemplated by the Code because no statute expressly creates the office of Bridgeport police officer or Lawrence County dispatcher or Lawrence County correctional officer.

The precise issue before us is one of first impression. However, other courts have examined whether particular persons were public officials under a variety of other statutes and scenarios. Some of these cases involved the issue of whether the claimants were public officials for the purpose of exempting them from workers' compensation coverage. See *Village of Streamwood Police Department v. Industrial Comm'n*, 57 Ill. 2d 345, 349, 312 N.E.2d 239, 242 (1974) (the court held that a Village of Streamwood police sergeant was not an official of the village for the purposes of section 1(b) of the Workmen's Compensation Act (Ill. Rev. Stat. 1969, ch. 48, par. 138.1(b)) because no municipal ordinance specifically created the office of police sergeant, and therefore he was afforded coverage); *County of Cook v. Industrial Comm'n*, 55 Ill. 2d 540, 543-44, 304 N.E.2d 616, 617-18 (1973) (the court held that a Cook County juvenile probation officer was an employee and not a public official and afforded workers' compensation coverage in the absence of a statute expressly creating the office); *City of Danville v. Industrial Comm'n*, 38 Ill. 2d 479, 485, 231 N.E.2d 404, 407 (1967) (the court held that a Danville police sergeant was an official of the City of Danville and specifically excluded from coverage under the Workmen's Compensation Act (Ill. Rev. Stat. 1965, ch. 48, par. 138.1 *et seq.*) where a Danville ordinance expressly created the office of police sergeant). The determinative factor in these and other cases was whether a statute or ordinance expressly created the office of the person seeking protection under the statute in issue.

The same approach was employed by the court more recently in *People v. Muniz*, 354 Ill. App. 3d 392, 820 N.E.2d 101 (2004)—a case involving the offense of threatening public officials. The issue in *Muniz* was whether the first deputy commissioner of the Chicago Public Library was a public official as defined by the Code. The court held, as a matter of law, that the first deputy commissioner of the library was

not a "public official" under section 12—9(b)(1) of the Code because the office had not been expressly created by statute. *People v. Muniz*, 354 Ill. App. 3d 392, 395, 820 N.E.2d 101, 104 (2004).

The holdings of the foregoing cases do not directly control the outcome in this case. However, we find the courts' analyses instructive to the extent that they hold that a statute or local ordinance must exist and expressly create an office for one to be considered a public official and that a statute or ordinance creating a department or department head is insufficient to create a subordinate office. Applying this analysis to the instant case, we find that the record does not reflect any statute or ordinance expressly creating the office of Bridgeport police officer or Lawrence County dispatcher or Lawrence County correctional officer. In the absence of a statute or ordinance creating such an office, Ash and Boren could not have been "appointed to an office which is established *** by statute" under the Code (720 ILCS 5/12—9(b)(1) (West 2002)).

With regard to police officers, the State relies principally on section 10—2.1—4 of the Illinois Municipal Code (the Municipal Code) (65 ILCS 5/10—2.1—4 (West 2002)) and *dicta* in *Village of Round Lake Beach v. Brenner*, 107 Ill. App. 3d 1, 436 N.E.2d 1058 (1982), in support of its contention that the Municipal Code establishes an office to which police officers are appointed. We find that the State's reliance on section 10—2.1—4 of the Municipal Code is misplaced, and we do not agree with the reasoning applied by the court in *Brenner*.

Section 10—2.1—4 provides, in part, that the board of police commissioners shall appoint all municipal police officers, unless the board provides otherwise by ordinance. The statute further provides that a full-time member of a municipal police department is a "city officer." 65 ILCS 5/10—2.1—4 (West 2002). This statute, however, does not expressly create the office of Bridgeport police officer.

*Brenner* involved the authority of the village mayor to appoint a successor chief of police without the approval of the village board. *Village of Round Lake Beach v. Brenner*, 107 Ill. App. 3d 1, 436 N.E.2d 1058 (1982). One issue in the case was whether the chief of police was a village officer whose appointment was subject to the Municipal Code. The Village of Round Lake Beach had enacted a local ordinance creating a police department consisting of a chief of police and a specified number of sergeants and patrol officers. *Village of Round Lake Beach v. Brenner*, 107 Ill. App. 3d 1, 4, 436 N.E.2d 1058, 1060 (1982). The court considered this ordinance, in conjunction with section 10—2.1—4 of the Municipal Code, in ruling that the village office of chief of police had been statutorily created and was subject to the Municipal Code. *Village of Round Lake Beach v. Brenner*, 107 Ill. App. 3d 1, 4, 436

N.E.2d 1058, 1060 (1982). In *dicta*, the court stated that section 10—2.1—4 of the Fire and Police Commissioners Act[1] "has been interpreted to establish a municipal office in the absence of an ordinance creating the office of policeman." *Village of Round Lake Beach v. Brenner*, 107 Ill. App. 3d 1, 4, 436 N.E.2d 1058, 1060 (1982). Interestingly, the court cited *City of Danville* as one of the cases adopting this interpretation.

As we mentioned above, the Illinois Supreme Court in *City of Danville* held that the Danville police sergeant was an official under the Workmen's Compensation Act and was therefore excluded from coverage. The reason for the court's ruling was the existence of a very specific local ordinance pursuant to which the claimant had been appointed. The local ordinance stated in part, " 'There is hereby created the office of police sergeants.' " *City of Danville v. Industrial Comm'n*, 38 Ill. 2d 479, 481, 231 N.E.2d 404, 405 (1967). The *City of Danville* court did not, as the *Brenner* court suggests, interpret section 10—2.1—4 of the Fire and Police Commissioners Act as establishing a municipal office in the absence of an ordinance creating the office of police officer.

We also reject the State's argument regarding county correctional officers and dispatchers. The State contends that JoAnn Boren, a full-time Lawrence County dispatcher, was acting in the capacity of a county correctional officer at the time Carrie threatened her and that she is a public official under the Code because county correctional officers are appointed to an office which is established by statute. The State's argument is wholly without merit. The State cites numerous statutes in support of this argument, including section 3—6017 of the Counties Code (55 ILCS 5/3—6017 (West 2002)) (vesting the sheriff with the care and custody of the county courthouse and jail), section 2 of the County Jail Act (730 ILCS 125/2 (West 2002)) (designating the sheriff as the jail warden and vesting the sheriff with the custody of prisoners), section 3 of the County Jail Act (730 ILCS 125/3 (West 2002)) (granting the sheriff power to appoint and remove a jail superintendent and hire and train jail personnel), and section 2 of the Illinois Police Training Act (50 ILCS 705/2 (West 2002)) (defining "county corrections officer" under the Illinois Police Training Act). We have reviewed these statutes and find that none of them expressly creates the office of Lawrence County dispatcher or Lawrence County correctional officer.

We acknowledge the apparent incongruity that results from our application of the law in the case where police officers and correctional

---

[1] Division 2.1 of article 10 of the Municipal Code has been known as the Fire and Police Commissioners Act.

officers and dispatchers in one municipality might be afforded protection under section 12—9 of the Code while similarly situated individuals in another municipality might be excluded from the Code, depending solely on the existence of a local ordinance creating the position. However, this is not a determinative factor in our decision here. In fact, the supreme court, while noting a similar inequity in its construction of the Workmen's Compensation Act, has put the onus on the General Assembly to provide further criteria to determine who is and is not an official and the framers of local ordinances to expressly create the office sought to be included or excluded, whichever the case may be. *City of Danville v. Industrial Comm'n*, 38 Ill. 2d 479, 484, 231 N.E.2d 404, 407 (1967); *Village of Streamwood Police Department v. Industrial Comm'n*, 57 Ill. 2d 345, 349-50, 312 N.E.2d 239, 242 (1974); see also *Moon v. The Mayor*, 214 Ill. 40, 73 N.E. 408 (1905).

■ In sum, we find as a matter of law that Bridgeport police officers and Lawrence County dispatchers and correctional officers are not "public officials" as that term is defined by section 12—9(b)(1) of the Code. Accordingly, Carrie's convictions must be reversed. Given our disposition in this case, it is unnecessary to consider if Bridgeport police officers and Lawrence County dispatchers and correctional officers satisfy the remaining two elements of the definition of "public official" under the Code. We also need not address the remaining issues Carrie raises in this appeal.

### III. CONCLUSION

For all of the foregoing reasons, we reverse the defendant Brian Carrie's convictions.

Reversed.

WELCH and HOPKINS, JJ., concur.