NOTICE
Decision filed 08/17/17. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2017 IL App (5th) 140432

NO. 5-14-0432

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Shelby County. |
| | ) | |
| v. | ) | No. 14-CF-48 |
| | ) | |
| BONITA D. GOODWIN, | ) | Honorable |
| | ) | Kimberly G. Koester, |
| Defendant-Appellant. | ) | Judge, presiding. |

_____

PRESIDING JUSTICE MOORE delivered the judgment of the court, with opinion.
Justices Chapman and Overstreet concurred in the judgment and opinion.

**OPINION**

¶ 1    The defendant, Bonita D. Goodwin, appeals her conviction, following a trial by jury in the circuit court of Shelby County, for the offense of threatening a public official. For the following reasons, we reverse.

¶ 2                                    FACTS

¶ 3    The facts necessary to our disposition of this appeal follow. On May 7, 2014, the defendant was charged, by information, with one Class 3 felony count of threatening a public official because, on that same date, she had allegedly "knowingly and willfully conveyed to Corrections Officer Tonya Atteberry, of the Shelby County Sheriff's Department, Illinois, a

1

public official, a communication threatening '...I'm thinking about killing you. I could go out to your house with a gun and you couldn't do anything about it.' " The information further alleged that the threat placed Atteberry "in reasonable apprehension of immediate or future bodily harm." The defendant was also charged, in a separate case that was tried with this case but not appealed herewith, with one Class A misdemeanor count of resisting a peace officer (of which she was convicted) and one Class B misdemeanor count of unlawful possession of cannabis (of which she was acquitted).

¶ 4    The defendant subsequently invoked her speedy trial rights, and the charges culminated in a jury trial that began on June 16, 2014. We will discuss only the testimony relevant to the issue dispositive of this appeal. Brian Litteral testified that he was a deputy sheriff with the Shelby County sheriff's office. He testified that at approximately 2 a.m. on May 7, 2014, he pulled over a Dodge pickup truck because the truck had no rear registration light. The defendant was a passenger in the truck. Deputy Litteral testified that the defendant was "fidgeting" and "kind of nervous" when he began asking questions of her and the driver. When he asked the driver for permission to search the truck, the defendant told the driver not to grant permission. Because the defendant was trying to distract the driver, Deputy Litteral asked the driver to exit the truck and speak to him outside, which she did. He testified that he informed the driver that she could either grant permission to search the truck, or deny permission, and that the driver granted permission. He testified that another deputy sheriff, Deputy Washburn, asked the defendant to exit the vehicle, which she did, and Deputy Litteral then began to search the vehicle. Subsequently, the defendant became agitated, and Deputy Litteral suspended his search to deal with her. Deputy Washburn took over the search and ultimately found a substance that he

2

believed was marijuana in the truck, and Deputy Litteral informed the defendant that she was going to be arrested for possession of marijuana.

¶ 5    Deputy Litteral testified that when he attempted to handcuff the defendant, she pulled her arm away in a jerking motion. After he and another deputy, Deputy Lustig, secured the defendant, she continued to act in an agitated manner, threatening to spit on Deputy Litteral. When she was placed in Deputy Litteral's squad car, the defendant was "threatening" and "yelling." When they arrived at the jail, the defendant was still "resisting" and began "making a major commotion within the jail." Deputy Litteral testified that Corrections Officer Atteberry attempted "multiple times" to book the defendant into the jail but that the process "had to be postponed" because of the defendant's continuing belligerent behavior. He testified that at approximately 6 a.m., he, Deputy Washburn, and "C.O. Atteberry" were present while C.O. Atteberry asked the defendant routine booking questions. When C.O. Atteberry asked the defendant if the defendant was "considering hurting herself or killing herself," the defendant stated, " 'No. I'm thinking about killing you,' " then added, " 'I can show up at your house with a gun and you can't do anything about it.' " Deputy Litteral testified that C.O. Atteberry then turned and asked him "if that would qualify for threatening a public official," and he responded that he believed it would. The booking process was again halted, and the defendant was placed back in a holding cell.

¶ 6    Jacob Washburn testified that he was 23 years old and had been employed as a deputy with the Shelby County sheriff's office for approximately two years. He testified that when he arrived at the scene of Deputy Litteral's traffic stop of the truck in which the defendant was a passenger, he approached the truck from the rear on the passenger side and could hear the defendant becoming "angry" with the driver after the driver said it was okay for the deputies to

3

search the truck. He testified that while he subsequently searched the truck, he "heard somewhat of a ruckus," looked up, and saw Deputy Litteral holding the defendant and asked Deputy Litteral if everything was okay. Deputy Litteral told him it was, and Deputy Washburn continued with his search, ultimately discovering "suspected cannabis." He testified that the defendant was "screaming" at the deputies and "becoming belligerent." Deputy Washburn observed the defendant trying to pull away from Deputy Litteral before Deputy Litteral and Deputy Lustig secured her.

¶ 7    Deputy Washburn testified that at approximately 6 a.m., he was present with Deputy Litteral when Atteberry attempted to process the defendant into the jail. He testified that "Ms. Atteberry was asking her if she felt like hurting herself or killing herself," to which the defendant responded, " 'No, but I am thinking about killing you. And I could show up to your house with a gun and there's nothing you could do about it.' " He testified that "Ms. Atteberry asked us if she [*sic*] felt like that was a threat to us, and I stated, 'Yeah,' that I felt like it was a threat." The booking process was discontinued, and the defendant was returned to her holding cell.

¶ 8    Dustin Lustig testified that he was a deputy with the Shelby County sheriff's office. He testified that when he arrived at the scene of Deputy Litteral's traffic stop of the truck in which the defendant was a passenger, he stood behind the truck, with the driver, while the truck was searched. He testified that Deputy Washburn "located drug paraphernalia" in the truck. He testified that he tried to calm the defendant, who was "very upset." When the defendant attempted to pull away from Deputy Litteral, who was preparing to arrest her, Deputy Lustig helped Deputy Litteral secure the defendant, who "continued to fight." After the defendant was taken away, he stayed behind to "clear the scene" of the traffic stop, then proceeded to the jail.

¶ 9 Tonya Atteberry testified next. When asked what her occupation was, she stated, "I'm a correctional officer at the Shelby County Detention Center." She testified that when the defendant was brought to the detention center at about 2:30 a.m., Atteberry "went out to the garage" because she had been told that help would be needed with the defendant. She testified that she "had went [*sic*] out to the garage when the deputy pulled up with [the defendant]" and helped "assist" the defendant into the jail. She testified that the defendant was not cooperative with the booking process, which had to be halted. At approximately 6 a.m., she again attempted to book the defendant and "got about halfway through" before the defendant threatened her. Atteberry testified that during the process, the defendant was "very sarcastic." When Atteberry asked the defendant whether the defendant was thinking of hurting or killing herself, the defendant replied, " 'No. I'm thinking about killing you.' " Atteberry testified that she then turned to "my deputies" and asked if that was threatening a public official; one deputy responded that it was. Atteberry testified that she then turned back to the defendant, who "proceeded to say, 'I could drive out to your house with a gun and there's nothing you could do about it.' " Atteberry testified that she then halted the booking process. She testified that she had never been threatened before. She conceded on cross-examination that she did not take any additional steps to protect herself afterward; however, on redirect examination, she testified that she took the threat seriously.

¶ 10 Following Atteberry's testimony, the State rested, and outside the presence of the jury, the defendant moved for a directed verdict. In support thereof, defense counsel argued, with regard to the count charging threatening a public official, that the plain language of the statute under which the count was brought required the State to prove that Atteberry was "a sworn law enforcement or peace officer." Defense counsel contended:

"There has been no evidence presented, nor could there be, that Tonya Atteberry is a public official. The only thing presented at all was that she is employed by the sheriff's department as a correctional officer."

Defense counsel cited two cases from the appellate court in support of his position: *People v. Muniz*, 354 Ill. App. 3d 392 (2004), and *People v. Carrie*, 358 Ill. App. 3d 805 (2005). In response, the State cited another appellate court case, *People v. Hale*, 2012 IL App (4th) 100949.

¶ 11 Following a brief recess, the trial judge ruled that under the statute, which had been amended since the *Carrie* case was decided, Atteberry qualified as a public official. Accordingly, the trial judge denied the defendant's motion for a directed verdict. Defense counsel requested time to do additional research on the issue, but the trial judge declined, stating that, under *Hale*, Atteberry was a public official because the trial judge believed that "the *Hale* case does set the precedence [*sic*] that a correctional officer is in fact a public official." She added, "This does go to what we're going to need to do specifically in the jury instructions." The defense then rested, and a jury instruction conference followed. Closing arguments were delivered the following morning, and then the trial judge instructed the jury, telling the jurors, *inter alia*, that "[a] person holding the position of a corrections officer is a public official."

¶ 12 The jury deliberated for approximately 40 minutes before returning with its verdicts. The defendant was convicted of threatening a public official and of resisting a peace officer but was acquitted of unlawful possession of cannabis. Following a sentencing hearing, she was sentenced. With regard to the felony conviction for threatening a public official, she was sentenced to 24 months of probation, 230 days in the county jail—which amounted to no additional jail time once she received all applicable credit for time served prior to trial—and various costs, fees, and fines. With regard to the conviction for misdemeanor resisting a peace

officer, which stemmed from pulling her arm away when Deputy Litteral attempted to arrest her, the defendant was sentenced to 230 days in the county jail—which likewise amounted to no additional jail time once she received all applicable credit for time served prior to trial—and court costs. As noted above, the misdemeanor conviction and sentence were not appealed herewith and are not before this court in this case. With regard to the felony conviction for threatening a public official, this appeal was timely filed.

¶ 13                                    ANALYSIS

¶ 14    On appeal, the defendant contends, *inter alia*, that her conviction for the offense of threatening a public official must be reversed because the State failed to adduce adequate evidence, as required by the applicable statute, that Atteberry was a public official. We agree. It is undisputed—indeed, it is axiomatic—that the State, with its ability to commence a criminal prosecution that may deprive an individual of his or her personal liberty, and/or other fundamental interests, possesses "great power and resources." *People v. Iozzo*, 195 Ill. App. 3d 1078, 1084 (1990); see also, *e.g.*, *People v. Moore*, 279 Ill. App. 3d 152, 156 (1996). It is equally undisputed and axiomatic that because of its possession of such great power and resources, when the State commences a criminal prosecution by charging a defendant with an offense of the State's choosing, due process demands that the State bear the burden of proving, beyond a reasonable doubt, all of the elements of the offense the State has chosen to charge. See, *e.g.*, *People v. Cameron*, 2012 IL App (3d) 110020, ¶ 27. The burden of proof remains with the State throughout the defendant's trial, never shifting to the defendant. See, *e.g.*, *id.* Until convicted, a defendant is presumed innocent and has no obligation to prove his or her innocence, testify, or present evidence. See, *e.g.*, *id.* Indeed, as the Supreme Court of Illinois has recognized, "[t]he due process clause of the fourteenth amendment to the United States Constitution requires that a

7

person may not be convicted in state court 'except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which [the person] was charged.' " *People v. Cunningham*, 212 Ill. 2d 274, 278 (2004) (quoting *In re Winship*, 397 U.S. 358, 364 (1970)). Accordingly, to safeguard this due process right, when this court reviews a case wherein a defendant has alleged that the evidence was not sufficient to convict the defendant, this court must ask whether, after viewing the evidence adduced at trial in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Id*. at 278-79; see also, *e.g.*, *People v. Cooper*, 194 Ill. 2d 419, 430-31 (2000).[1] We turn, then, to the criminal offense charged by the State in this case, which contains the essential elements the State was required to prove to obtain a conviction thereunder.

¶ 15    Section 12-9 of the Criminal Code of 2012 (720 ILCS 5/12-9 (West 2014)) criminalizes the threatening of public officials and human service providers. Section 12-9(b)(1) states that for purposes thereof, a "public official" is:

"a person who is elected to office in accordance with a statute or who is appointed to an office which is established, and the qualifications and duties of which are prescribed, by statute, to discharge a public duty for the State or any of its political subdivisions or in the case of an elective office any person who has filed the required documents for nomination or election to such office. 'Public official' includes a duly appointed assistant State's Attorney, assistant Attorney General, or Appellate Prosecutor; a sworn law enforcement or peace officer; a social worker, caseworker, or investigator employed by

---

[1] In addition to directly challenging the sufficiency of the evidence, the defendant intermingles her argument with the claim that the trial judge erred when she denied the defendant's motion for a directed verdict. The standard of review for this intermingled claim is the same (see, *e.g.*, *People v. Schronski*, 2014 IL App (3d) 120574, ¶ 19 ("In reviewing defendant's challenge to the trial court's denial of her motion for a directed verdict, we must determine whether the evidence presented by the prosecution, viewed in the light most favorable to the prosecution, established defendant's guilt beyond a reasonable doubt.")), and we shall address both claims concurrently.

8

the Department of Healthcare and Family Services, the Department of Human Services, or the Department of Children and Family Services." 720 ILCS 5/12-9(b)(1) (West 2014).

We note as well that section 12-9(a-5) requires that if the threat is to "a sworn law enforcement officer, the threat must contain specific facts indicative of a unique threat to the person, family or property of the officer and not a generalized threat of harm." 720 ILCS 5/12-9(a-5) (West 2014).

¶ 16    On appeal, the State contends, and the defendant agrees, that "the Committee Notes for IPI, Criminal 11.49A apportion the definition of public official into two factors," the first, in this case, being a determination by the trial judge of whether a correctional officer is a public official, and the second being a determination by the jury of whether Atteberry was a correctional officer, and therefore a public official. The parties base their agreement on the committee's statement, with regard to the above-quoted definition in section 12-9(b)(1) of "public official," that "[t]he Committee concluded that the nature of the office is a question of law to be decided by the court; whether the person allegedly threatened was such a public official is a question of fact for the jury." Illinois Pattern Jury Instructions, Criminal, No. 11.49A, Committee Note (approved May 2, 2014). Accordingly, the State urges this court to conduct a *de novo* review of, and then affirm, the trial judge's threshold determination that pursuant to *People v. Hale*, 2012 IL App (4th) 100949, "[a] person holding the position of a corrections officer is a public official," as well as the trial judge's subsequent jury instruction to that effect.

¶ 17    Section 12-9(b)(1), quoted above in its entirety, consists of two sentences. The first sentence refers to elected or appointed offices that must be established, according to the plain language of the definition, "to discharge a public duty for the State or any of its political subdivisions." 720 ILCS 5/12-9(b)(1) (West 2014). The second sentence lists officials—a duly

9

appointed assistant State's Attorney, assistant Attorney General, or Appellate Prosecutor; a sworn law enforcement or peace officer; a social worker, caseworker, or investigator employed by the Department of Healthcare and Family Services, the Department of Human Services, or the Department of Children and Family Services—who by their specific inclusion in the statute are deemed public officials. *Id*. The State does not argue in this appeal that the "office" of correctional officer is an elected or appointed office established "to discharge a public duty for the State or any of its political subdivisions." Accordingly, the State has forfeited consideration of such an argument. See Ill. S. Ct. R. 341(h)(7) (eff. Feb. 6, 2013) (argument must contain the contentions of the appellant, the reasons therefor, and the citation of authorities; points not argued in an opening brief are forfeited and shall not be raised in the reply brief, in oral argument, or in a petition for a rehearing). Even if the State had not forfeited consideration of such an argument, the argument would be unavailing because, in our previous decision in *People v. Carrie*, 358 Ill. App. 3d 805, 809-11 (2005), we examined the language of the first sentence of section 12-9(b)(1) (which was exactly the same both before and after the most recent amendments to the statute) and concluded that under it, *inter alia*, in the absence of a statute or ordinance expressly creating the office of county correctional officer in a particular county, a county correctional officer in that county could not qualify as a public official for purposes of the statute. Thus, the State's forfeiture with regard to any argument pursuant to the first sentence of section 12-9(b)(1) notwithstanding, to the extent Atteberry could qualify as a public official under the statute, it would have to be as a "sworn law enforcement or peace officer" (language that was added to the statute after *Carrie* was decided) because it is undisputed that she is not one of the other specifically-listed officials and it is undisputed that no evidence was presented regarding a statute or ordinance expressly creating the office of Shelby County correctional

10

officer. Therefore, to the extent the trial judge in this case needed to make a threshold determination regarding the "nature of the office" at issue, the determination to be made was whether a correctional officer is a sworn law enforcement or peace officer.

¶ 18    In support of its proposition that the trial judge did not err in this case, the State contends that in *People v. Hale*, 2012 IL App (4th) 100949, our colleagues in the Fourth District held that, for purposes of section 12-9, a correctional officer employed by a county sheriff's department is always a public official. In *Hale*, our colleagues noted that the alleged public official, Brian Doellman, "testified he worked as a correctional officer with the Adams County sheriff's department." *Id.* ¶ 5. However, the issue with regard to section 12-9 that was actually decided by the court in *Hale* was whether the jury was properly instructed about section 12-9's requirement that if the threat is to a sworn law enforcement officer, the threat must contain specific facts indicative of a unique threat to the person, family, or property of the officer and not a generalized threat of harm. *Id.* ¶¶ 16-26. The issue the *Hale* court decided was not, as it is in this case, whether a correctional officer employed by a county sheriff's department is a public official or whether the State presented adequate evidence that the recipient of the threat was a public official. Accordingly, there is no reason to believe the *Hale* court was ever asked to address those issues, and we simply do not know what other facts were contained in the record in *Hale* about Doellman's status; indeed, as the defendant points out, Doellman, or another witness, may have testified that Doellman was a sworn law enforcement officer, but the *Hale* court may have declined to include that testimony in its decision because it deemed the testimony irrelevant to the issue raised on appeal by the defendant in *Hale*. Accordingly, *Hale* is not apposite to the issue before us.

¶ 19　Moreover, the possibility of additional, uncited testimony from Doellman or others about Doellman's sworn or unsworn status notwithstanding, we note that although the *Hale* court at times repeatedly cited with accuracy the requirement of section 12-9(b)(1) that the threat in question be made against, *inter alia*, a "sworn law enforcement or peace officer" (720 ILCS 5/12-9(b)(1) (West 2008); see *id*. ¶¶ 20-21, 23-24), when it ultimately presented its analysis of the facts before it, the *Hale* court nevertheless reasoned, "Officer Doellman was an employee of the Adams County sheriff's department. Thus, he was a law-enforcement officer and thereby a 'public official.' " *Hale*, 2012 IL App (4th) 100949, ¶ 21. The fact that the *Hale* court failed to include the adjective "sworn" to modify law enforcement officer when analyzing Doellman's status—despite the inclusion by the General Assembly of "sworn" in the statute—and failed to analyze the implications of the distinction between a "sworn law enforcement or peace officer" and a sheriff's department employee who is unsworn but acting in a correctional officer capacity, casts doubt on the soundness of *Hale* and the appropriateness of using it to help decide the issue before us.

¶ 20　As the defendant points out, this court has recognized that in some Illinois counties, sheriff's department employees working as correctional officers may be sworn deputies—who are sworn law enforcement officers—assigned to work in the jail division of the sheriff's department. See, *e.g.*, *Gibbs v. Madison County Sheriff's Department*, 326 Ill. App. 3d 473, 478-79 (2001); see also *County of Du Page v. Illinois Labor Relations Board, State Panel*, 395 Ill. App. 3d 49, 51 (2009) (no distinction between sworn deputies working in various bureaus of the Du Page County sheriff's department). However, in other counties, sheriff's department employees working as correctional officers may be unsworn, civilian correctional officers. See, *e.g.*, *People v. De Filippo*, 387 Ill. App. 3d 322, 327-28 (2008) (Lake County); see also *County*

12

*of Du Page*, 395 Ill. App. 3d at 57, 59 (corrections bureau of Du Page County sheriff's department consists of both sworn deputies and civilian employees; civilian employees in Receiving and Discharge area wear civilian uniforms and cannot enforce the law). Moreover, in some counties, the status of a sheriff's department employee can change, depending upon whether that employee is serving in a sworn deputy sheriff capacity (such as part of a patrol unit) or in a unsworn correctional officer capacity, and the badge that employee wears will change accordingly, with deputies wearing a five-pointed star, and jailers wearing a six-pointed star. *De Filippo*, 387 Ill. App. 3d at 327-28.

¶ 21    In this case, there were a number of offenses with which the State could have charged the defendant as a result of her behavior toward Atteberry. The State chose to charge the felony offense of threatening a public official. Therefore, it was incumbent upon the State to prove, *inter alia*, that Atteberry met the General Assembly's statutory definition of a public official for purposes of that offense. Although the General Assembly could have listed "correctional officer" within its definition, or could have used the arguably-encompassing term "law enforcement or peace officer" rather than "sworn law enforcement or peace officer," it did not do so. Thus, we conclude that the trial judge erred in her threshold determination that in all cases a person holding the position of a correctional officer is a public official as well as in her subsequent jury instruction to that effect. She also erred when she denied the defendant's motion for a directed verdict.

¶ 22    We reiterate that the burden of proof in this case began, and remained, with the State. See, *e.g.*, *People v. Cameron*, 2012 IL App (3d) 110020, ¶ 27. With regard to shouldering its burden of proof in this case, the evidence the State chose to adduce at trial with regard to whether Tonya Atteberry was a public official consisted, in its entirety, of Atteberry's testimony,

13

adduced when she was asked what her occupation was, that "I'm a correctional officer at the Shelby County Detention Center." Atteberry did not testify that she was a sworn law enforcement or peace officer with the Shelby County sheriff's office. In fact, she did not even testify that the Shelby County sheriff's office was her employer,[2] which would have at least allowed the trial judge and the jury to eliminate the possibility that she was employed by another county entity or by a nonpublic entity such as a private corrections contractor. She did not testify about what, if any, education and training she received to become "a correctional officer at the Shelby County Detention Center." Although she at times referred to other individuals as deputies, she did not use any term that could have led the trial judge or the jury to reasonably conclude that she too was a deputy (and therefore a sworn law enforcement officer), such as, for example, referring to the deputies as her "fellow deputies." Moreover, no other witness provided any testimony about whether Tonya Atteberry was a sworn law enforcement or peace officer, and therefore a public official, or about who her employer was; nor was any foundation presented that would have supported such testimony had it been adduced. None of the three deputies who testified referred to Atteberry as a deputy: one referred to her as "C.O. Atteberry" and the other referred to her as "Ms. Atteberry."

¶ 23     In short, even when the scant evidence the State chose to present at trial to support the charge it chose to bring is viewed very liberally, in the light most favorable to the prosecution, we must conclude that no rational judge or jury could have found, beyond a reasonable doubt, that Tonya Atteberry was a public official as required by the statute. Although it had every opportunity to attempt to do so, the State simply did not adduce sufficient evidence to allow a

---

[2]Defense counsel misstated the evidence when he argued, in his motion for a directed verdict, that "[t]he only thing presented at all was that [Atteberry] is employed by the sheriff's department as a correctional officer." In fact, as noted elsewhere in this decision, the entirety of her testimony was that she was "a correctional officer at the Shelby County Detention Center," which obviously does not include testimony as to who employed her.

rational trier of fact to convict the defendant of threatening a public official, and we therefore reverse that conviction.

¶ 24    Because we reverse the defendant's conviction, we must consider whether principles of double jeopardy bar further proceedings on remand. The United States Supreme Court has held:

> "The Double Jeopardy Clause forbids a second trial for the purpose of affording the prosecution another opportunity to supply evidence which it failed to muster in the first proceeding. This is central to the objective of the prohibition against successive trials." *Burks v. United States*, 437 U.S. 1, 11 (1978).

Accordingly, because the evidence adduced by the State at the defendant's first trial, in support of the charge it chose to pursue against her, was not sufficient to convict the defendant, principles of double jeopardy bar further proceedings in this case.

¶ 25                                    CONCLUSION

¶ 26    For the foregoing reasons, we reverse the defendant's conviction.


¶ 27    Reversed.

2017 IL App (5th) 140432

NO. 5-14-0432

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Shelby County. |
| | ) | |
| v. | ) | No. 10-CM-178 |
| | ) | |
| BONITA D. GOODWIN, | ) | Honorable |
| | ) | Kimberly G. Koester, |
| Defendant-Appellant. | ) | Judge, presiding. |

| | |
|---|---|
| **Opinion Filed:** | August 17, 2017 |

| | |
|---|---|
| **Justices:** | Honorable James R. Moore, P.J. |
| | Honorable Melissa A. Chapman, J., and<br>Honorable David K. Overstreet, J.,<br>Concur |

| | |
|---|---|
| **Attorneys for Appellant** | Michael J. Pelletier, State Appellate Defender, Ellen J. Curry, Deputy Defender, Eun Sun Nam, Assistant Appellate Defender, Office of the State Appellate Defender, Fifth Judicial District, 909 Water Tower Circle, Mt. Vernon, IL 62864 |

| | |
|---|---|
| **Attorneys for Appellee** | Hon. Gina Vonderheide, State's Attorney, Shelby County Courthouse, Main Street, Shelbyville, IL 62565; Patrick Delfino, Director, David J. Robinson, Acting Deputy Director, Kelly M. Stacey, Staff Attorney, Office of the State's Attorneys Appellate Prosecutor, 730 East Illinois Highway 15, Suite 2, P.O. Box 2249, Mt. Vernon, IL 62864 |